SARTAIN, Judge.
Defendants appeal from a judgment of the district court declaring plaintiff totally and permanently disabled as of the date of the trial (April 27, 1967) and awarding plaintiff maximum workmen’s compensation benefits with credit for compensation already paid.
Plaintiff’s employment, the hazardous nature thereof, the accident and the initial injuries sustained by him are not in dispute. The questions for resolution here on appeal as in the trial court are whether or not plaintiff was capable of returning to his regular duties on January 8, 1967, as recommended by his treating physician; or, whether or not the pain and discomfort experienced by plaintiff on the two days that he did return to work were sufficient to warrant his refusal to continue to work. We find that the findings of fact by the trial judge and his appreciation of the law thereto are correct and his decision should be affirmed.
Plaintiff was employed by defendant (Doiron) on August 25, 1966. His duties consisted of driving a heavy cement truck, *597 which also included washing it down and performing other general maintenance tasks on the truck. In addition, he was required to do manual labor such as unloading ninety-four pound cement sacks every other week and such other work as may he designated by his employer. Larry Doiron, Inc. is in the general construction business engaged primarily in the construction of concrete streets, gas and water systems.
Plaintiff was seriously injured on August 25, 1966. He had just repaired a flat on one of the large interior tires of the truck. As he was mounting the tire it exploded and the rim struck plaintiff on the left leg causing a compound comminuted fracture of the left lower tibia with fragments of the bone protruding through the laceration.
The day following the accident, plaintiff was transferred to Touro Infirmary in New Orleans where he was seen and treated by Dr. George Cary, Jr., an orthopedic specialist. Plaintiff was taken to surgery, the wound was cleansed of contaminated material and the broken bones were realigned. His leg was then placed in a long-leg walking cast. Plaintiff remained in the hospital for twenty-one days. His recovery was considered satisfactory by Dr. Cary, who saw him on five occasions following his release from the hospital. On January 18, 1967, Dr. Cary pronounced plaintiff capable of returning to his duties as a truck driver. On that examination the doctor observed a “minimal muscle atrophy” of plaintiff’s left thigh and calf. He also detected that plaintiff’s left leg was one-half inch shorter than his right. He recommended that plaintiff return to him in six months for a follow-up examination. When plaintiff returned to Dr. Cary at the request of defendant’s insurer on March 8, 1967, Dr. Cary prescribed a “1/2" shoe (heel) elevation (L) heel” to compensate for the difference in the length of his two legs. He also prescribed an elastic stocking to be worn to compensate for the swelling experienced by plaintiff in his left leg.
In the interim between Dr. Cary’s examinations of January 18 and March 8, 1967, plaintiff returned to work and attempted to drive his truck. He stated that he could not do so without experiencing pain and also because of the lack of strength in his left leg. He stated that at the end of the second day he reported his inability to continue working to his employer and the latter “just walked away”.
Mr. Doiron testified that when he received Dr. Cary’s report of January 18, 1967 stating that plaintiff was fit to return to work he expected plaintiff to do so and relied entirely on the doctor’s opinion that he was capable of performing his work. Mr. Doiron stated that when plaintiff complained to him at the end of the second day’s work he was referred to Dr. Russo in Morgan City. Dr. Russo (according to Doiron) called Doiron’s office and asked permission to furnish plaintiff with diet pills. Mr. Doiron refused to authorize the purchase of diet pills saying that it was not his fault plaintiff gained this weight. According to Doiron it was plaintiff’s excess weight that was causing his discomfort. Dr. Russo was not called to testify. Plaintiff stated that he never saw Dr. Russo concerning his injury or his inability to work. He explains that on the one occasion he saw Dr. Russo it was for sore throat.
On February 14, 1967, shortly after plaintiff had attempted to work, he was sent by his attorney to Dr. James Gilly, an orthopedic surgeon, for an examination. Dr. Gilly’s testimony was taken by deposition. He deposed that in his opinion, plaintiff was incapable of returning to his full duties at that time. He stated that plaintiff was complaining of pain and weakness of the left leg. Dr. Gilly found that his complaints were consistent with his objective findings because his left thigh was an inch and a half smaller than his right thigh. Dr. Gilly attributed the pain to muscle fatigue occasioned by this atrophy of the left leg. He also attributed the swelling of the left leg to dis *598 use of that member. Dr. Gilly felt that the patient would do better if he was given supervised physical therapy. He estimated that at the end of six months to one year, during which time plaintiff would suffer some pain, discomfort and swelling of the left leg, he should be fully recovered except for a 5% general disability of the leg.
Again with respect to Dr. Cary it is particularly noted that on his examination of March 8, 1967, he was not advised of plaintiff’s endeavor to work or of Dr. Gilly’s recommendation for supervised physical therapy. Dr. Cary was of the opinion that plaintiff’s .regular work duties would be of sufficient theraputic value to bring about plaintiff’s general rehabilitation.
It was not until several days before the trial in April of 1967 that Dr. Cary was asked by defendant’s counsel and expressed the opinion that plaintiff would sustain a 5 to 10% disability of the left leg.
With a conflict in the medical testimony relative to plaintiff’s ability to return to work, lay testimony was admitted. This testimony clearly preponderates to the effect that plaintiff was incapable of performing his full work duties.
It must also be noted that immediately following Dr. Gilly’s examination, plaintiff’s counsel requested authorization for supervised physical therapy and even suggested that with this supervised therapy plaintiff might be able to return to work if his duties were initially limited to driving his truck. This request was admittedly denied by defendants who relied steadfastly upon the doctor’s recommendation of January 18, 1967, that work therapy would suffice. It is also noted that defendant declined to authorize the prescription for the heel lift and elastic stocking.
The district judge concluded, and we think rightly so, that on April 27, 1967, plaintiff was not capable of returning to his full duties nor to do substantially the same type of work that he did prior to his injuries. Of rightful concern to the judge a quo was the fact that defendants failed to authorize supervised physical therapy which could have been undertaken by plaintiff near his home at Morgan City. In fairness to Dr. Cary it must be noted as stated above that his final evaluation of a 5 to 10% disability of the leg was not made until several days before the trial.
Plaintiff was described by both doctors as a person of limited understanding and education but a most cooperative patient. He was a large person (6' 5") and weighed approximately 220 pounds when he was injured and 245 pounds when he was directed to return to work in January of 1967. There is not the slightest scintilla of evidence that the plaintiff was exaggerating or feigning his complaints. Under these conditions we feel that more attention should have been given to plaintiff’s rehabilitation requirements. Both doctors were of the opinion that with or without supervised therapy it would take plaintiff at least six months to fully recover the use of his leg.
Defendants recognize that an injured employee is not required to return to work where such work would cause undue pain and discomfort. Fouchea v. Maloney Trucking and Storage Co., Inc., La.App., 108 So.2d 273 (Orl.App., 1959); Lawes v. Houston Fire and Casualty Co., 127 So.2d 84 (1st La.App., 1961); Hebert v. Your Food Processing and Warehouse Co., 170 So.2d 765 (1st La.App., 1964); and Wilson v. Fogarty Bros. Transfer Co., 126 So.2d 6 (4th La.App., 1961). However, defendants bottom their case on the proposition that an injured employee is required to return to work and endure moderate discomfort where that discomfort is the result of a long period of disuse of an injured member. Hebert v. Your Food Processing and Warehouse Co., supra, and Wilson v. Fogarty Bros. Transfer Co., supra. In essence, they urge that plaintiff in his refusal to continue his work fell into that group of individuals that are classified as uncooperative and therefore not entitled to compensation benefits. Daste v. Gwin, 13 *599 La.App. 378, 128 So. 41 (Orl.App., 1930); McGee v. Augenstein Construction Co., 137 So.2d 403 (3d La.App., 1962); Costello v. French Market Ice Co., 159 So. 466 (Orl. App., 1935); Allien v. Hartford Accident and Indemnity Co., 160 So.2d 824 (3d La. App., 1964); and O’Niel v. M. W. Kellogg Co., Inc., 190 So. 182 (1st La.App., 1939). The facts of this case do not warrant these last two conclusions.
Lastly, plaintiff urges that the defendants’ failure and refusal to provide supervised physical therapy to plaintiff and to place him back on compensation until such time as he was capable of substantially performing his duties were arbitrary and capricious decisions which entitle plaintiff to statutory penalties and attorney’s fees. The trial judge, citing Andrus v. Great American Company, 161 So.2d 109 (3d La.App., 1964) declined to hold that the aforementioned actions of the defendants were arbitrary and capricious. We concur in his denial of penalties and attorney’s fees.
Accordingly, for the above and foregoing reasons the judgment of the district court is affirmed at defendants’ costs.
Affirmed.