SCHOTT, Chief Judge.
This is a worker’s compensation case. Plaintiff, a truck driver, was injured on the job when a tire he was changing exploded. He first filed his claim for benefits with the Office of Worker’s Compensation of the State Department of Labor which recommended that benefits be paid for temporary total disability together with penalties and attorney fees. The employer and his insurer rejected this recommendation and suit followed. The trial court found that plaintiff was temporarily totally disabled and awarded him commensurate benefits with penalties and attorney fees. Defendant, the compensation insurance carrier, has appealed.
The principal issue is whether evidence produced by defendant showing that plaintiff was seen driving trucks from the time of the accident until the date of trial precludes the award for compensation benefits, penalties, and attorney fees.
On November 6, 1985 plaintiff was in the process of changing a truck tire when it exploded propelling the rim into his face. He was taken to Charity Hospital for emergency treatment. The records show that he suffered a laceration of the forehead and an open fracture of the frontal sinus bone with bone fragments pushed into the sinus cavity. A plastic surgeon cleaned the wound and connected the bone fragments into position before closing the wound. A CAT scan showed no abnormalities. He returned to the hospital three times for follow up treatment. Plaintiff continued to *391 suffer with constant headaches, eye problems, and sensitivity to noise and light.
On February 17,1986 plaintiff was examined by Dr. Gary F. Carroll, an internist. He recommended that plaintiff have a neurological evaluation to deal with his diagnosis of persistent headaches after head injury-
On August 29, 1986 plaintiff went to Dr. Jose Garcia Oiler, a neurosurgeon, for a neurological evaluation. Dr. Oiler recorded as plaintiffs principal complaint, “Severe headaches and blurring of vision — I can’t trust my eyes for driving. I never had headache problems before.” Upon examination of plaintiff, Dr. Oiler found that plaintiff’s reflexes were abnormal on the left side of his body, which indicated some brain involvement. He thought that plaintiff’s accident necessarily produced a brain concussion. He described plaintiff’s head injury as a compound, depressed fracture of the frontal sinus bone with a laceration of the sutra trochlear artery. He explained that this injury to the artery affected the trigeaminal nerve which controls sensation in the forehead and that this injury to the artery and nerve in combination with the concussion caused his headaches as well as his sensitivity to noise and light. As to plaintiff’s complaint of blurred vision, he opined that the accident affected the nerves behind the eye which control the pupil so that the pupil does not adjust properly as compared to the other eye causing blurred vision. However, he explained that the condition does not affect visual acuity. He also thought that had a second CAT scan been done a week after the accident it would have revealed delayed bleeding on the brain which would also explain the headaches. Dr. Oiler strongly recommended further tests on plaintiff including a CAT scan, a magnetic scan, an EEG, an MRI of the brain and of the cervical spine and a psychologcial evaluation. He stated that plaintiff was disabled from performing the regular work of a truck driver as a result of these injuries and condition and would remain disabled for a substantial period of time.
Defendant referred plaintiff to Dr. John F. Schuhmacher, a neuro-surgeon. In a medical report he stated that he examined plaintiff on October 7, 1987. Plaintiff complained of constant headaches and blurred vision but Dr. Schuhmacher found no neurological deficits. However, he recommended that plaintiff have a complete neu-ropsychological evaluation because of “a large amount of depression and operant pain conditioning”; a psychiatric evaluation for his depression, and an evaluation by an opthalmologist for his alleged visual problems.
On October 17, 1987 Dr. Walter Diaz, an ophthalmologist examined plaintiff and found his eyesight to be virtually normal in spite of some problem with his peripheral vision.
Defendant produced a number of witnesses who testified that they had seen plaintiff at various times and places and on numerous occasions driving trucks since the date of the accident. Most of these witnesses were acquainted or associated with plaintiff’s former employer in some way. Dr. Oiler testified that plaintiff was disabled as a professional truck driver. Asked on cross examination how this could be when he was seen driving trucks so often Dr. Oiler stated that “he was not physically disabled from getting in a truck and driving it from here to Baton Rouge, he can physically do it but he would have headaches, he would have troubled vision, he might be subject to accidents, and I doubt that he could be a professional truck driver, we’re talking about 12 hours a day behind that wheel throughout the country.”
In finding that plaintiff’s disability was temporary and total the trial court stressed plaintiff’s need for further testing in order to determine the extent of his injury and the proper treatment for it. This conclusion is solidly supported by Dr. Oiler’s testimony and to some extent even by defendant’s Dr. Schuhmacher.
Defendant assigns error first on the basis of its witnesses who saw plaintiff driving and who flatly contradicted plaintiff’s testimony that he had not been able to work and had not once driven a truck since *392 the accident. Defendant also produced video tapes secretly taken of plaintiff by an investigator who conducted a surveillance on plaintiff. Defendant argues that plaintiffs testimony was clearly impeached by these witnesses and tapes. The basis for plaintiff’s case was his own testimony that he had recurring headaches, visual problems, and sometimes oversensitivity to noise and light. Defendant seems to suggest that the trial court should have rejected all of plaintiffs testimony and concluded that there was nothing wrong with him after hearing defendant’s witnesses.
This court viewed the tapes. They are not clear and do not establish that plaintiff was without disability. As to defendant’s witnesses, regardless of their number, their credibility was subject to evaluation by the trial judge who was able to observe their demeanor in person. Aside from their demeanor on the stand which this court cannot appreciate, the record does show that defendant’s witnesses could have been biased because of their association with or relationship to plaintiff’s employer. The record also shows that these witnesses failed to produce any records to support their testimony even though some of them testified that plaintiff drove for them.
Even if we were to question the trial court’s credibility evaluation of these witnesses we would still not be persuaded that there was nothing wrong with the plaintiff. This is so because all the physicians seem to agree that something was wrong. Defendant’s Dr. Diaz was careful to restrict his opinion to plaintiff's visual acuity but he found “hysterical field vision,’’ a peripheral vision problem, and he deferred to neuro-surgical opinion and recommended psychiatric evaluation. In his report, Dr. Schuhmacher stated that plaintiff could return to work but he recommended further medical examination for plaintiff. Of course, Dr. Oiler recommended a number of further tests to determine what was wrong with plaintiff. The unanimity among the physicians that something was wrong and that further testing was required before plaintiff could be given a clean bill of health seemed to be one of the key factors which led the trial court to conclude that plaintiff was disabled, not permanently, but temporarily.
In large measure, the trial court relied on the testimony of Dr. Oiler which defendant would discredit because of its “rambling and hearsay nature” and because of alleged self-contradiction. The trial judge has great discretion in controlling the testimony of witnesses. Especially considering that this was a bench trial we find no error in the trial court’s allowing Dr. Oiler to ramble. The hearsay defendant complains about was Oiler’s testimony as to what plaintiff told him in providing the history of his injury and treatment. Defendant argues this was inadmissible based upon Roy v. Commercial Union Ins. Co., 486 So.2d 251 (La.App. 3rd Cir.1986) in which the court stated: “Any hearsay evidence not necessary to a diagnosis of plaintiff’s condition is inadmissible.” Despite this pronouncement the court in Ray found that the physician’s (the same Dr. Oiler) testimony of the contents of medical reports was not sufficiently prejudicial to warrant a reversal. This was a jury trial of a tort suit not a bench trial of a compensation claim. The cited case does not support plaintiff’s argument.
With all of the faults alleged by defendant in the testimony of Dr. Oiler the trial court had the primary responsibility to evaluate his testimony. Prom our review of Oiler’s testimony we are not convinced that the trial court erred in accepting his testimony despite its shortcomings.
Next defendant contends the trial court erred in awarding plaintiff penalties and attorneys fees. Defendant paid compensation benefits to plaintiff from November 7, 1985 until January 15, 1986. Defendant discontinued the payment because of the reports that plaintiff was driving trucks for others. On February 17,1986 plaintiff was examined by Dr. Gary F. Carroll at the request of plaintiff’s attorney. This physician recommended a neurological evaluation and stated that his prognosis was uncertain. The record is devoid of any clear evidence that demand was made upon defendant for benefits until plaintiff filed his *393 claim with the State Department of Labor on May 30, 1986. In support of plaintiffs claim for attorney fees he filed an itemized statement of his attorney’s services which includes an entry on April 15,1986 of “Letter to Hartford”, but this letter was not filed in evidence.
When an employer fails to pay benefits each unpaid installment is subject to an added penalty of twelve percent unless non payment results from conditions over which the employer or insurer had no control. R.S. 23:1201. An employer is bound to pay compensation benefits within sixty days after receipt of written notice of a claim by the employee. Failure to pay upon such notice subjects the employer to a reasonable attorney’s fee where such failure to pay was arbitrary, capricious or without probable cause. R.S. 23:1201.2.
As to the twelve percent penalty the burden was upon the employer and insurer to show that nonpayment was the result of conditions beyond their control. They discontinued payments because plaintiff was allegedly driving, but the trial court found that the testimony concerning this was not worthy of belief. Plaintiff sustained an injury which defendant considered compen-sable until these reports surfaced. Defendant took no steps to determine his medical condition but simply discontinued the payments. The trial court’s conclusion that plaintiff is entitled to the penalties is not manifestly erroneous.
As to attorney fees the first written notice of plaintiff’s claim was in the form of his claim with the State Department of Labor on May 30, 1986. Since defendant could not be compelled to pay attorney fees unless payments were not made within sixty days after this notice plaintiff cannot recover attorney fees for legal services performed prior to that time. On the other hand, plaintiff filed suit on September 17, 1986 and defendant continued to ignore him in spite of the recommendations by Dr. Garcia and Dr. Schuhmacher that he have additional treatment. Under these circumstances he was entitled to attorney fees.
Plaintiff answered the appeal seeking an increase in attorney fees. He presented a detailed record of the attorney’s time spent on the case until trial time, and for this 135 hours plus the time for trial itself the court awarded $3,500. Even disallowing recovery for services prior to July 1, 1986, we have concluded that this is inadequate, and that plaintiff is entitled to additional attorney fees for the work done in this court in any event. The attorney’s fee will be increased to $10,000.
Accordingly, the judgment appealed from is affirmed but amended to increase the attorney’s fee to $10,000.
AMENDED AND AFFIRMED.