| STEWART, Judge.
Plaintiff, James Gorman (“Gorman”), a mechanic employed by Jerry Freeland of Jerry’s Muffler, Brake and Tire, and his wife filed suit against the defendant, Lynwood E. Spann (“Spann”), after a tire and rim owned by the defendant exploded severely injuring plaintiffs hand. Gorman alleged that the rim was subject to a defective condition causing the rim to be unreasonably dangerous in normal use, and that Spann, as “owner and possessor” of the rim had garde of the defective rim.
The trial court ruled against plaintiffs, finding that Gorman’s experience should have made him aware of the possibility that the tire could have contained a defect. The plaintiff could have reduced the risk by taking measures to protect himself from injuries. Considering these findings, the court concluded that the risk posed by the defect in the rim was not unreasonable. We affirm.
FACTS
On October 20, 1992, Gorman was at his place of employment. Gorman’s duties required him to repair tires, and to help with mufflers and brakes. Mr. Spann, who was engaged in the sales and service of new and used mobile homes, needed a supply of axles, tires and rims to be able to move mobile homes. There was testimony at trial that the substantial lateral stress received by tires and rims on mobile homes during transportation frequently caused the tires to go flat. When many of these tires and rims no longer would hold air, Mr. Spann would load them onto his pickup truck and deliver them to Mr. Freeland’s business. Freeland’s employees would first inspect the tires and rims visually. If a rim was no longer serviceable, it was | ¿rejected and thrown away. They would reuse and clean rims that were serviceable, if necessary. They mounted tires on the rims using a tire changing machine, and inflated to the proper pressure that, according to testimony, was approximately sixty to 70 pounds per square inch.
At the time of the accident, Gorman had already mounted a tire onto a rim and was in the process of airing the tire up. He stopped the inflation process to check the air pressure and found the tire to have about thirty-five to 40 pounds of pressure. He continued the inflation process, heard a hissing sound, and before he could remove his hand from the tire and rim, there was an explosion in which his left hand was injured. There was no testimony to show that the explosion was the result of a malfunction in the tire changing machine or that the tire-rim unit exploded because Gorman had overinflated it. Furthermore, Gorman testified that the rim in question was “a real good looking rim” that was “real clean like it was a new rim.” Gor-man testified that from looking at the tire and the rim he detected no problem, and that if he had detected a problem he would have thrown the tire or rim away.
*687 Mr. Spann testified that he did business with Mr. Freeland on a fairly regular basis. With respect to the tires for the mobile homes, Spann testified that he expected Mr. Freeland to take the tires, find out why they were flat, air them up, and check them out. He carried a load of tires and rims to Mr. Freeland approximately seven or eight times a year. Spann did not inspect the tires before he took them to Freeland’s business. His only concern was that they were flat and needed repairing. He never directed Free-land’s work in any way, nor had any idea where the rim at issue came from; he also | glooked at the other rims and could find no manufacturer’s name. When asked if it would have been possible for Mr. Spann to have done the work himself, he responded that “it might be possible, but I didn’t do it. I didn’t have the equipment. I didn’t have the knowledge. I didn’t have the personnel.”
DISCUSSION
In the trial court’s ruling, the court cited Celestine v. Union Oil Company of California, 94-1868 (La.4/10/95), 652 So.2d 1299, in which the Louisiana Supreme Court stated that a plaintiffs status as a repairman is a significant factor in determination of whether a risk is unreasonable. The plaintiff would distinguish Celestine because the repairman was employed specifically for the job of repairing a known defective element of a structure, whereas Gorman was employed to repair a tire, “and absolutely no one had ever suggested there might be a defect in the rim.” Furthermore, both Gorman and Free-land testified that they previously had never had a tire rim explode. Gorman also asserted that he only possessed knowledge and skills that he had got on jobs where they paid him less than a minimum wage.
As recognized in Celestine, there is no simple rule of law that we can apply mechanically to decide whether an unreasonable risk of harm is presented in a particular case. Thus, there is no per se rule that an owner may never be held strictly liable to a repairman injured while repairing a defect. Instead, the individual circumstances must be considered, including but not limited to social, moral, and economic considerations, the knowledge of the repairman, incentive of the owner to repair the defect, the reasonableness in Lpresuming that a particular repairman is familiar with the particular risks, and the ability of the repairman to minimize such risks.
In applying these factors to the unique facts' of the instant case, we observe that given the special equipment needed either to remove tires from rims or put tires on rims, it was quite reasonable for Mr. Spann to leave this work to tire “experts” who had the personnel and equipment to do the job. There is no question that Mr. Spann had completely turned over this job to Mr. Freeland, not only actually to do the physical labor, but also to make the judgment call about whether or not particular tires and rims were still serviceable. With respect to the knowledge of the repairman, we observe that Mr. Spann entrusted the job to Jerry Freeland, and the fact that Mr. Freeland, in turn, may have assigned the work to an employee of limited education does not mean a court should ignore the fact that Mr. Freeland was engaged in the business of repairing tires, was knowledgeable of such matters, and had the special equipment needed for the job.
Finally, we note that although Freeland and Gorman never had a tire rim explode before, neither testified that he was unaware of the possibility of a tire assembly exploding while being inflated. The occurrence of such incidents is common knowledge. See, Burse v. Alexander Trucking, 541 So.2d 390 (La. App. 4th Cir.1989); Rougeau v. Sears Roebuck and Company, 383 So.2d 141 (La.App. 3d Cir.1980); McCormick v. Firestone Tire and Rubber Company, 328 So.2d 911 (La. App. 4th Cir.1976); Spillers v. Montgomery Ward & Company, Inc., 294 So.2d 803 (La. 1974); Bailey v. Larry Doiron, Inc., 225 So.2d 596 (La.App. 1st Cir.1969)
|5The above cited jurisprudence suggests that while exploding tire assemblies are not an everyday occurrence, the possibility of such explosions should be well known to those who work in the tire repair business, and the severity of resulting injuries can be great. Moreover, the possibility of explosion and serious injury is even more reason for a *688 layperson to entrust such work to businesses that specialize in such work, and the severity of the possible injuries also suggests that although such occurrences are rare, precautions against injury are well advised.
Considering the foregoing factors, we conclude the trial court did not err in finding that Mr. Spann was not liable to Mr. Gorman under principles of strict liability. Under the circumstances, the court was not clearly wrong to find the risk reasonable. It was necessary for Mr. Spann to take the tires and rims to a tire business for inspection and repair, and we must hold that such a business had knowledge of the fact that tire assembly explosions, although rare, do occur, and that the resulting injuries can be serious. Thus, such businesses must be held to know the risk posed, and under the facts of this case, where Mr. Spann had no knowledge of any defect, the tire business employee cannot recover from the customer for the injuries incurred because of the explosion.
DECREE
For the reasons set forth above, we affirm the trial court’s judgment at appellants’ costs.
AFFIRMED.