652 So.2d 1299 (1995)
Leroy CELESTINE
v.
UNION OIL COMPANY OF CALIFORNIA.
No. 94-C-1868.
Supreme Court of Louisiana.
April 10, 1995.
Rehearing Denied May 11, 1995.
*1300 J.B. Jones, Jr., Jennifer J. Bercier, Cameron, for applicant.
Randall K. Theunissen, Nora M. Stelly, Allen & Gooch, Lafayette, Allen L. Smith, Plauche, Smith & Nieset, Lake Charles, for respondent.
CALOGERO, Chief Justice.[*]
The issue in this case is whether Louisiana law recognizes a "repairman" exception to an owner's strict liability for injury caused by a vice, defect or ruin on his premises. The jury concluded that defendant Union Oil Company was strictly liable for injuries suffered by plaintiff Leroy Celestine, a welder employed by an independent contractor hired by Union, when a handrail fell onto his back while he was performing maintenance and repair work. The Third Circuit Court of Appeal reversed, holding that an owner is not strictly liable to a repairman for injuries caused directly by the defect, vice or ruin under repair. Although several Louisiana courts of appeal and the United States Fifth Circuit Court of Appeals have addressed the issue of the repairman exception, it is a matter of first impression in this Court. After reviewing the arguments of counsel, the applicable principles of law and the record herein, we hold that an owner is strictly liable to a repairman for injury caused by a vice, defect or ruin on his premises only where the defect therein poses an unreasonable risk of harm vis-a-vis the repairman. Louisiana does not recognize a blanket "repairman" exception to strict liability under La.C.C. arts. 2317 and 2322. However, given that the determination of whether a risk is "unreasonable" is context specific, the fact that the injured party was a repairman hired to fix the defect is a relevant factor in assessing whether the defect posed an unreasonable risk of harm. Because the risk of harm presented by the handrail and faced by repairman Celestine was not unreasonable, we affirm the court of appeal's reversal of the trial court judgment.
Leroy Celestine, a 32 year old welder, was employed by Gulf Coast Marine Fabricators, Inc. Union contracted with Gulf Coast to provide maintenance and repair services on West Cameron 593A, an offshore stationary platform. A contract between Union and Gulf Coast describes the services to be performed by the Contractor Gulf Coast in general terms: "Furnish equipment and personnel to perform services normally provided by CONTRACTOR when requested by UNION on UNION's oil and gas properties located in *1301 the State of Louisiana and offshore in the Gulf of Mexico." Trial testimony explained that on this particular job, Union contracted with Gulf Coast for necessary maintenance work on West Cameron 593A which consisted of sandblasting, painting, and the repair of handrails and gratings. Further, certain handrails set in sockets were to be replaced with handrails welded directly to the platform deck because the sockets had a tendency to hold moisture, thus causing maintenance problems.
Prior to Gulf Coast's undertaking this project, Lewis Brown, a Union employee, walked the platform with Gulf Coast employee Gary Dale Beaubouef, pointing out just which handrails should be replaced. According to Beaubouef, Brown explained that the handrails were being changed because they were in disrepair. Beaubouef estimated approximately eighty (80%) percent of the handrails on the platform's second level were to be changed. He also confirmed that the handrail on which Celestine was later working, at the time of the accident, was one of the handrails selected for maintenance.
Celestine was in the process of removing a handrail on the second level of the platform when the accident occurred. This handrail was constructed of three horizontal pipes connected by vertical pipes inserted into sockets which were welded to plates on an I-beam on the platform. Realizing that the removal of the handrail was a dangerous task, Celestine wore a safety belt and life jacket and placed another life jacket on the rail to serve as a cushion. He leaned across the bottom pipe and over the water to examine where to cut with his torch. Jeffery Bibaeff, a Gulf Coast employee, was on the opposite end of the handrail, which was made up of three horizontal pipes. Bibaeff was supporting the handrail where he stood. No one was supporting the handrail directly above where Celestine was working. Celestine admitted after his accident that there should have been more than one workman assisting him and that on prior occasions, there were always two people supporting the rail, one at each end, while he cut the vertical rail away from the socket. He was not concerned at the time about the lack of additional assistance because the rail appeared to be in good shape.
Celestine testified he understood that one of the reasons the sockets were being removed was because of accumulation of moisture and resulting rust damage. However, on this particular rail, while the socket seemed to be rusty, the plate that was welded to the I-beam was not. Celestine proceeded to burn the paint off of the socket. Then he set his torch to cutting the socket away from the I-beam. After cutting for approximately a minute, the handrail dropped. A weld broke on the far end of the rail, causing the socket into which the vertical rail was inserted to partially disconnect from the I-beam at that point. At the same time, the socket on which Celestine was working disconnected and the rail fell onto Celestine's back. The workman assisting Celestine by holding the rail on the opposite end was unable to stop its fall.
This was not the first time a handrail fell while Celestine was at work. Previously, a handrail broke loose but was caught by the two workmen assisting Celestine on that occasion. In the prior incident, Celestine was cutting one end of the rail when the other end of the rail broke where the rail was inserted into the socket. The socket did not break away from the I-beam as it did in the current incident.
Celestine was transported for medical treatment for his back. Two herniated discs were diagnosed and he underwent surgery. When his pain continued, he underwent a second surgery to fuse the spine at the area of the herniations. The second operation did not provide sufficient relief but Celestine declined further surgery. He currently has a 10-15% whole body impairment and his treating physician testified that Celestine would not be able to return to work as a welder but would be restricted to light activity jobs.
Celestine and his wife Beverly, individually and on behalf of their two minor children, *1302 filed suit against Union and two Union employees, Lonnie Dugas and James Menville, alleging strict liability under C.C. arts. 2317 and 2322, and negligence. After trial, the jury found that Union, Dugas and Menville were not negligent but that the condition of Union's platform created an unreasonable risk of injury which was a cause of Celestine's accident and injury. Further, the jury found that Celestine was negligent and such negligence was a contributing factor. In response to the Jury Interrogatory, "What percentage of negligence do you assess to the defendants, and what percentage of negligence do you assess to the plaintiff?", the jury assessed Union with 60% and Celestine with 40%. The jury awarded general damages, damages for lost wages and medical expenses to Celestine, and damages for loss of consortium to his wife and children. The trial court entered judgment reflecting the jury verdict and further rendered judgment on the intervention of Celestine's employer and workers compensation carrier.
Both Celestine and Union filed motions for judgment notwithstanding the verdict. Celestine argued that the jury's finding of comparative negligence was legally erroneous and that the damage award should be increased. The trial judge rejected Celestine's argument that comparative negligence was inapplicable in a strict liability case and concluded that the jury was free to compare Union's non-negligent strict liability and Celestine's negligent conduct to determine the extent to which each contributed to his injuries. However, the trial court did increase the awards for general damages and lost wages. In its motion for judgment notwithstanding the verdict, Union contended that it should not be held strictly liable where Celestine was performing repair work because it was not unreasonable to subject a repairman to the risks inherent in making repairs. Union's motion was denied by the trial court which cited the general rule that recovery under strict liability is not allowed where the risk of harm is clear and obvious, or where the repairman is aware of the danger. Whether the danger was obvious, whether Celestine was aware of the danger, and whether the manner of repairing the handrail was unsafe were all questions of fact for the jury to determine, and the trial court found no error in the conclusions of the jury.
Both parties appealed. The Third Circuit Court of Appeal reversed the finding that Union was strictly liable and affirmed that Union and its employees were not negligent. Judgment for the intervenors was also reversed, and Celestine's assigned errors of inadequate damages and assessment of comparative fault were pretermitted.
The Court of Appeal cited the United States Fifth Circuit case of Ladue v. Chevron, USA, Inc., 920 F.2d 272 (5th Cir.1991) as the applicable law in Louisiana on this issue. The facts of Ladue are very similar to the facts herein. Plaintiff, a roustabout hired to repair grating on an offshore platform, was injured when a portion of the grating broke loose. He avoided falling into the water by grabbing hold of the deck but injured himself in the process. The Ladue plaintiff sued the platform owner, alleging strict liability under La.C.C. arts. 2317 and 2322. The district court granted summary judgment for the defendant and the Court of Appeals affirmed in an opinion authored by Judge Alvin B. Rubin. Judge Rubin, for the panel, reviewed Louisiana law interpreting La.C.C. arts. 2317 and 2322 as well as an owner's obligations under these articles. Judge Rubin noted that one way to discharge the owner's obligation under La.C.C. art. 2322 is to repair a potentially dangerous condition. By allocating the burden of loss to the owner, the Civil Code provides owners an economic incentive to effect such repairs, and this incentive would be destroyed if owners are held strictly liable when repairmen are injured by the very condition they are hired to repair. Judge Rubin also reviewed the "unreasonable risk" analysis of Entrevia v. Hood, 427 So.2d 1146 (La.1983), discussed further below, and concluded that the owner was not strictly liable under these circumstances.
The court of appeal in this case concluded that the Ladue opinion was correct and held *1303 accordingly, succinctly summarizing its holding at 636 So.2d 1138, 1143:
Simply stated, for an owner to be held in strict liability, the vice, defect or ruin being repaired cannot be the sole cause of the repairman's injury; there must be more, e.g. some other defect....
Celestine applied to this Court for a writ of review, assigning as error the Court of Appeal's holding of the inapplicability of strict liability and its reversal of the jury's finding that the platform posed an unreasonable risk of injury to Celestine. We granted the writ application to address this question of first impression: Does Louisiana law recognize a "repairman" exception to an owner's strict liability for injury caused by a vice, defect or ruin on the premises?[1]
An owner's liability for a vice or defect on the premises is rooted in La.C.C. arts. 2317 and 2322.[2] Both articles impose strict liability, or liability without fault, based upon status as an owner or custodian rather than on personal fault. Fonseca v. Marlin Marine Corp., 410 So.2d 674 (La. 1981). Under La.C.C. art. 2317, liability is imposed upon an individual as a custodian for damage caused by things in his custody. Loescher v. Parr, 324 So.2d 441 (La.1975). Under La.C.C. art. 2322, an owner is liable for damages to any person injured in an accident caused by the owner's neglect to repair the building or from a defect in its original construction. Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1978).
To recover under La.C.C. 2317, a plaintiff must prove that he was injured by a thing which was in the care or custody of the defendant and that such thing was defective. Fonseca, supra; Loescher, supra. To recover under La. 2322 against an owner of a building, a plaintiff must prove that the building posed an unreasonable risk of injury to others and that he was damaged by virtue of this risk. Entrevia v. Hood, 427 So.2d 1146 (La.1983). Celestine would like the inquiry to end at this point with the conclusion that as Union was the custodian of the platform and as Celestine was injured by an alleged defect or risk of injury on the platform, then Union is strictly liable. However, this interpretation of the law ignores the definition of "defect" and an "unreasonable" risk and the limitations placed on an owner's liability.
A building owner is not responsible for all injuries resulting from any risk posed by his building; he is only liable for those injuries caused by an unreasonable risk of harm to others. Entrevia, 427 So.2d at 1149. Likewise, strict liability requires the plaintiff to prove that the vice or defect of the thing is a condition which poses an unreasonable risk of harm to others. Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106 (La. 1990). Thus, to prevail under the strict liability theories embodied in La.C.C. arts. 2317 and 2322, Celestine must show that he was exposed to an unreasonable risk of harm from the condition of the handrail which he was hired to repair.
We addressed the methodology for determination of whether a risk was unreasonable in Entrevia v. Hood, supra, where a trespasser sued the owner of an unoccupied farmhouse for damages sustained allegedly caused by a defect in the rear steps, alleging strict liability. We concluded that under the circumstances, "in light of all relevant moral, *1304 economic and social considerations, the defective steps did not pose an unreasonable risk of harm to others." 427 So.2d at 1147. In reaching this conclusion, we cautioned that the unreasonable risk of harm criterion was not a simple rule of law which could be applied mechanically to the facts of a case. Justice and social utility must serve as guideposts and moral, social and economic values must be considered in a determination of whether the risk is unreasonable. Claims and interests should be balanced, risk and gravity of harm should be weighed, and individual and societal rights and obligations must be considered. Entrevia, 427 So.2d at 1149; Langlois v. Allied Chemical Corp., 258 La. 1067, 1084, 249 So.2d 133, 140 (1971).
We now follow these guideposts in a determination of whether the risk of injury faced by Celestine was unreasonable. In Ladue, 920 F.2d at 277, Judge Rubin instructed that determination of whether a risk is unreasonable is personal to the particular plaintiff:
Whether a particular risk of harm is reasonable cannot be determined in a vacuum. The phrase "unreasonably dangerous", in the words of Louisiana's late distinguished Professor Wex S. Malone, "has no discernible content of its own and ... must acquire its meaning solely from the environment attendant on each of the variety of disputes in which it is put to use." (footnote omitted.) Unlike the regime of strict products liability, which uses the "ordinary consumer" as its benchmark (footnote omitted), Louisiana's scheme of strict liability under Articles 2317 and 2322 posits no constant person or persons, mythical or real, with respect to whom the reasonableness of a given risk is to be measured. For that reason, the Louisiana courts have found themselvesunder the rubric of assessing a risk "under all of the circumstances of a particular case" (footnote omitted)determining the reasonableness of a given risk "vis-a-vis the plaintiff" (footnote omitted), or more accurately, vis-a-vis the plaintiff and those similarly situated.
Thus, the determination of whether a particular risk of harm is reasonable is a matter wed to the facts of the case. Perhaps except only in ultrahazardous cases, it is impossible and improper to characterize a risk as unreasonable without consideration of the surrounding circumstances. Thus, any per se rule that an owner may never be held strictly liable to a repairman injured while repairing the alleged defect is unworkable and contrary to the fact intensive nature of the definition of "unreasonable risk." Rather, the individual circumstances, including but not limited to the social, moral, economic considerations, the degree of knowledge of the repairman, the incentive or disincentive to the owner to repair the vice or defect, the reasonableness of presuming that a particular repairman is cognizant of the particular risks, and the ability of the repairmen to minimize such risks, should all be factored into and weighed in the "unreasonable risk" calculation. For example, the extent to which an owner's incentive to repair the premises may be destroyed if held strictly liable to a repairman must be balanced against the repairman's rights under La.C.C. art. 2322 to hold an owner answerable in damages for defects or vices on the premises. To the extent that the Third Circuit may have adopted a per se rule of a "repairman" exception to an owner's strict liability, such a ruling is not correct.
Celestine argued that the court of appeal decision here conflicted with the Fourth Circuit Court of Appeal decision in Mason v. Liberty Mutual Insurance Co., 423 So.2d 736 (La.App. 4th Cir.1982). The trial court had held that the only possible cause of action for plaintiff, an employee of a renovation contractor seeking recovery for injuries sustained in a fall while working on a residential roof, was in negligence, and that strict liability was not a viable theory of recovery. The Fourth Circuit reversed, holding that the employee could in fact assert strict liability theories against the owner. Mason is not contrary to our holding here. The Fourth Circuit in Mason recognized, as we do today, that there is no per se exception of repairmen from the ambit of an owner's strict liability. Such exception only applies if a *1305 factual analysis results in a determination that the risk of injury or harm is unreasonable under the circumstances.
We turn now to consideration of whether the risk of injury or harm resulting in damages was unreasonable vis-a-vis Celestine. The facts of this case do not support the conclusion that the defective handrail which caused the injury presented an unreasonable risk for Celestine. Plaintiff Celestine was the repairman hired to fix the defective handrails on the platform. As a repairman, presumably he possessed certain knowledge and skill. The handrail that injured Celestine had been specifically selected for maintenance work. This was not the first handrail Celestine had repaired on this assignment. Celestine was the only welder on the job and he possessed the skills and knowledge of a specialized repairman. Celestine knew the defect was present as evidenced by his earlier experience when another rail fell, although without injury to him on that occasion. At that time, Celestine was assisted by two workmen and he knew that with adequate assistance, the risks of repair would be minimal. As the court of appeal concluded, his injury was the result of the manner in which he chose to repair the handrail rather than his exposure to an unreasonable risk of harm. As in Ladue, the risk faced here by Celestine was known to him and was not an unreasonable one. The handrail served a crucial safety purpose and was an integral part of the platform. As in Ladue, the offshore platform was a structure with obvious social and economic utility and corresponding benefits. The community as a whole and the community occupying the platform are served by the owner's efforts to maintain the handrails in a safe condition.
We therefore conclude that an owner is strictly liable to a repairman for injury caused by a vice, defect or ruin on his premises only where the building or defect therein poses an unreasonable risk of harm vis-a-vis the repairman. Given that the determination of whether a risk is "unreasonable" is context specific, the fact that an injured party was a repairman hired to fix the defect is a relevant factor in assessing whether the defect posed an unreasonable risk of harm. Applying the unreasonable risk of harm analysis of Entrevia to the facts and circumstances before us, the risk of harm presented by the handrail was not unreasonable and Union, as owner of the platform, is not strictly liable to repairman Celestine.
In light of this conclusion, we must consider the adequacy of the trial court's instructions to the jury on the issue of determination of the "reasonableness" of a risk. The Court of Appeal below found reversible error in the trial court's failure to instruct the jury on the principles involved in strict liability concerning a repairman. Union had requested the trial court to instruct the jury that no duty is owed and no strict liability claim arises when a repairman is injured by the very condition he was hired to repair. The Court of Appeal concluded that the jury instructions were incomplete and the jury should have been instructed on the jurisprudential interpretation of when an owner is not liable in strict liability to a repairman.
We do not adopt a "repairman" exception to strict liability under La.C.C. arts. 2317 and 2322. However, we do conclude that plaintiff's status as a repairman is a significant factor in determination of whether a risk is unreasonable. The trial court instructed the jury that in deciding the reasonableness of the plaintiff's conduct, all of the circumstances of the case should be considered. However, the trial court did not instruct the jury that plaintiff's status as a repairman was a significant factor, one coincidentally supporting the absence of unreasonable risk, to be considered by the jury. In light of Entrevia v. Hood, supra, prior Louisiana jurisprudence[3] and our conclusion that status as a repairman is a significant *1306 factor to be considered in the fact-specific determination of whether a risk is unreasonable, in retrospect the jury was not adequately instructed so as to facilitate a reasoned judgment under the applicable legal principles. Under these circumstances, the jury's finding that the platform created an unreasonable risk of injury is not entitled to the deference normally accorded the factfinder.
We conclude that the jury was inadequately instructed on the legal principles applicable to a claim of strict liability where the plaintiff is a repairman. Upon consideration of the applicable law and relevant facts herein, including plaintiff's status as a repairman and an owner's duties and obligations under the Civil Code, we also conclude that the risk of harm presented by the handrail was not unreasonable, and we affirm the Court of Appeal's reversal of the trial court judgment.

DECREE
Accordingly, for the foregoing reasons, we affirm the decision of the court of appeal. All other issues are pretermitted.
AFFIRMED.
VICTORY, J., dissents.
NOTES
[*] Kimball, J., not on panel. Rule IV, Part 2, § 3.
[1] After the writ application was granted, in addition to the assignments of error included in the writ application, Celestine argued to this Court in brief and in oral argument that even though not raised in his writ application, this Court had jurisdiction to address the jury's assessment of comparative negligence and the inadequate damages award.
[2] La.C.C. art. 2317 provides:

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
La.C.C. art. 2322 states:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.
[3] See e.g., Eldridge v. Bonanza Family Restaurant, 542 So.2d 1146, 1150 (La.App. 3rd Cir. 1989), "The existence of the grease on the roof was not a defect constituting an unreasonable risk of harm for which defendants had a duty to warn, especially when coupled with the fact that plaintiff was hired for the very purpose of removing the fan and the fan grease trap that caused the grease leakage."; Ladue v. Chevron, USA, supra.