I2CRAIN, Judge Pro Tem.
Control Valve Specialists, Inc. and Scottsdale Insurance Company (hereafter collectively Control Valve) are the remaining defendants in a products liability and personal injury action brought by plaintiff Wayne Lee Sanders and his wife, Yvonne B. McLain Sanders. Control Valve initially moved for summary judgment in 1992. The trial court denied the motion on the grounds that there existed a material issue of fact regarding the effect, if any, of Control Valve’s failure to replace the bolts when it serviced the valve assembly in 1985, prior to the accident in which plaintiff was injured. Control Valve did not seek writ applications for this court to consider the denial of its initial motion for summary judgment.
Another defendant in this action, Ciba-Geigy Corporation, the owner of the actuator valve which Mr. Sanders alleges was the defective valve which caused his injury, also filed a motion for summary judgment, which the trial court granted. We affirmed the judgment of the trial court, maintaining Ciba-Geigy’s motion for summary judgment. Subsequent to our decision in Sanders v. Posi-Seal, 93-1007 (La.App. 1st Cir. 4/8/94); 635 So.2d 760, Control Valve filed a second motion for summary judgment, which was also denied by the trial court. We granted Control Valve’s application for supervisory writs. The issues for review are (1) whether the trial court erred in refusing to apply the law of the ease doctrine and (2) whether the trial court erred in denying the motion for summary judgment.

FACTS

The following are the undisputed facts as set forth in Sanders v. Posi-Seal International, 93-1007, p. 2 (La.App. 1st Cir. 4/8/94); 635 So.2d 760, 761.
Ciba-Geigy owns and operates a plant in St. Gabriel, Louisiana. A 30 inch butterfly actuator valve (tag # HV0130) is used in the HCN unit of the plant and is instrumental to the operation of the HCN unit. The valve is operated or run by an actuator which is attached to the valve. The actuator and the valve are attached together by a bracket; the actuator is bolted to one side of the bracket by four bolts [.-¡and the valve is bolted to the opposite side of the bracket by four separate bolts.
Routine inspections and maintenance are performed at the plant and the HCN unit is periodically shut down in order to have the valves serviced. Such servicing or repairing is done by outside labor at an industrial valve repair shop. In December of 1988, Ciba-Geigy sent several valves for reconditioning and repair to Southern Valve Services, Inc. (Southern Valve). Among those sent was the 30 inch butterfly actuator valve (tag # HV0130). The valve had previously been repaired or reconditioned for Ciba-Geigy in 1985 by Control Valve Specialists, Inc. (Control Valve).
*745 Wayne Lee Sanders was employed by Southern Valve as an industrial valve repairer since 1978. He had been previously employed by another business performing the same type of repairs from 1974 to 1978. Mr. Sanders’ task was to test the valve, repair it if it did not work properly and recondition it to make it like new.
The first step in repairing or reconditioning the valve is to ‘stroke’ the valve. This is accomplished by applying pneumatic air pressure to the air cylinder of the valve unit in order to test it to observe how it operates on the ‘line’ or HCN unit. In preparing to ‘stroke’ it, Sanders placed the valve unit on top of a five gallon metal bucket instead of fastening it in a vise which was apparently available for such repairs. When Sanders applied the air pressure either the bolts sheared off causing the actuator to break loose and strike Sanders on the leg, or the valve fell off the bucket striking Sanders on the leg.

LAW OF THE CASE

Control Valve contends that in affirming the decision of the trial court in Sanders v. Posi-Seal, 93-1007, p. 8 (La.App. 1st Cir. 4/8/94); 635 So.2d at 764, we determined that the actuator valve unit created no unreasonable risk of harm to Mr. Sanders and the “law of the case” doctrine should be applied, thus making this determination applicable to Control Valve.
The ‘law of the case’ doctrine applies to all prior rulings or decisions of an appellate court or the supreme court in the same case, not merely those arising from the full appeal process. See Brumfield v. Dyson, 418 So.2d 21 (La.App. 1st Cir.), writ denied, 422 So.2d 162 (La.1982). This policy applies to parties who were parties to the case when the former decision was rendered and who thus had their day in court. The reasons for the ‘law of the case’ doctrine [are] to avoid relitigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both Uparties by affording a single opportunity for the argument and decision of the matter at issue. Day v. Campbell-Grosjean Roofing and Sheet Metal Corp., 260 La. 325, 256 So.2d 105 (1971). This doctrine is not an inflexible law, thus appellate courts are not absolutely bound thereby and may exercise discretion in application of the doctrine. It should not be applied where it would accomplish an obvious injustice or where the former appellate decision was manifestly erroneous. Brumfield v. Dyson, 418 So.2d at 22.
Dodson v. Community Blood Center of Louisiana, Inc., 633 So.2d 252, 255 (La.App. 1st Cir.1993), writs denied, 93-3158 (La. 3/18/94); 634 So.2d 850 and 93-3174 (La. 3/18/94); 634 So.2d 851.
In Sanders v. Posi-Seal, we considered the duty owed by Ciba-Geigy, the owner of the actuator valve, to Sanders, the employee hired to repair and recondition the actuator valve. We considered the social and economic benefit to the community of the operational actuator valve, as well as the social, economic and moral incentive to Ciba-Geigy, as owner of the valve, to maintain or repair its property. We also considered the fact that Mr. Sanders was a very experienced repairman who was hired to repair or recondition the very object which he alleges caused his injury. We concluded that, under these circumstances, Ciba-Geigy owed no duty to warn Mr. Sanders about the possibility that the nuts and bolts attaching the valve to the actuator were susceptible to metal fatigue and corrosion. Nor did Ciba-Geigy have a duty to inform Mr. Sanders of the proper method to “stroke” the valve. We further concluded that, under these circumstances, the valve created no unreasonable risk of harm to Mr. Sanders vis a vis Ciba-Geigy.
The relationship between Control Valve, a professional repairer of industrial valves, and Mr. Sanders, a subsequent professional repairer of industrial valves, is distinguishable from the relationship between Mr. Sanders and Ciba-Geigy. As a professional repairer of industrial valves, Control Valve owes a duty to perform its reconditioning and repair of the industrial valves in a safe and workmanlike manner. The duty owed by Control Valve to a subsequent repairer differs from that owed by the owner of the valve to a *746 professional repairer. Accordingly, the “law of Isthe case” doctrine does not apply to preclude litigation of this matter.
This assignment is without merit.

SUMMARY JUDGMENT

A summary judgment should be rendered if the “pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966. The movant has the burden of establishing that reasonable minds must inevitably conclude that on the facts before the court the movant is entitled to judgment as a matter of law. See Insley v. Titan Insurance Co., 589 So.2d 10 (La.App. 1st Cir.1991). The applicable standard of review is de novo review, using the same criteria used by the district court in deciding whether summary judgment should be granted. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991).
Liability based on the negligence of a defendant is analyzed under a duty risk analysis: is the conduct a cause in fact of the resultant harm; did defendant owe a duty to plaintiff; was the duty breached; and was the risk or harm caused within the scope of the duty. Fox v. Board of Supervisors of Louisiana State University, 576 So.2d 978 (La.1991). The determination of the existence of a duty and the scope of the risk involve policy determinations and are legal questions to be decided by the court. Breach of duty and causation are to be determined by the trier of fact. Meany u Meany, 94-0251 (La. 7/5/94); 639 So.2d 229.
In determining whether to impose a duty in a particular situation, the court may consider various moral, social, and economic factors, including whether the imposition of a duty would result in an unmanageable flow of litigation; the ease of association between the plaintiff’s harm and the defendant’s conduct; the economic impact on society as well as the economic impact on similarly situated parties; the nature of the defendant’s activity; moral considerations, particularly victim fault; and precedent as well as the direction in which society and its institutions are evolving.
Id. at 233.
|6We now consider whether the scope of the risk to this particular plaintiff was encompassed within the duty owed by defendant Control Valve.
In Celestine v. Union Oil Company of California, 94-1868 (La. 4/10/95); 652 So.2d 1299, a repairman sued the owner of a building for an injury allegedly caused by the condition which he was hired to repair. The supreme court stated that, to recover in strict liability under Civil Code articles 2317 and 2322, the plaintiff must be exposed to an unreasonable risk of harm from the condition he was hired to repair. The supreme court enumerated the factors also considered in Meany v. Meany, 94-0251 (La. 7/5/94); 639 So.2d at 233: justice and social utility as well as moral, social and economic values; balancing of the claims and interests; weighing of the risk and gravity of harm; and consideration of individual and societal rights and obligations. Celestine v. Union Oil Co., 94-1868 (La. 4/10/95); 652 So.2d at 1304. Factored into this determination must be the degree of knowledge of the repairman, the reasonableness of assuming that the particular repairman is cognizant of the risk, and the ability of the repairman to guard against such risks. Id. Although Celestine involved an action in strict liability by a repairman against the owner of a building which he was hired to repair, the factors and guidelines set forth should also be applicable to an action under Civil Code article 2315 by any plaintiff repairman injured while repairing an object which he was hired to repair.
Mr. Sanders is an experienced repairman who has been engaged in repairing industrial valves since 1975. The valves were removed from the operating line by Ciba-Geigy and sent to Southern, Mr. Sanders’ employer, for reconditioning and repair. Southern’s instructions were to make the valves like new. Any valve sent to Southern for repair or reconditioning by Ciba-Geigy was sent there because Ciba-Geigy was experiencing some type of problem with the valve. It is uncontested that it is common *747 knowledge among industrial repairers that the bolts, nuts and screws are susceptible to metal fatigue, rust and corrosion. In recognition 17of this potential problem, it was Southern’s policy to replace all bolts, screws and nuts with new ones when reconditioning or repairing the valves. Thus, an experienced repairman such as Mr. Sanders should have been aware of this potential danger; he was hired to correct this problem; and he was capable of protecting himself from this potential danger.
A repairman has the duty to perform repairs in a safe manner. See Hoyt v. Wood/Chuck Chipper Corp., 92-1498 (La.App. 1st Cir. 1/6/95); 651 So.2d 1344, writ denied, 95-0753 (La. 5/19/95); 654 So.2d 695. The duty owed by Control Valve to perform repairs in a safe manner would protect against risks such as a negligent or non-negligent user or innocent third party being injured by the negligent repair. It does not encompass the risk that a subsequent repairman hired to recondition or repair the valve and make it “like new,” which entails replacing the nuts, bolts and screws due to metal fatigue, rust and corrosion, would be injured by the very thing which he was hired to replace or repair. Under these circumstances the scope of the risk of the type of injury suffered by Mr. Sanders does not fall within the ambit of protection of the duty owed by Control Valve to Mr. Sanders.
This assignment has merit.
The writ of certiorari is made peremptory. The judgment of the trial court is reversed, and summary judgment is granted in favor of relators, Control Valve Specialists, Inc. and Scottsdale Insurance Company, and against respondents, Wayne Lee Sanders and Yvonne B. McLain Sanders.
Costs are assessed against respondents, Wayne Lee Sanders and Yvonne B. McLain Sanders.
REVERSED AND RENDERED.