NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-1427

DORIS BELL

VERSUS

DOLGENCORP, LLC D/B/A DOLLAR GENERAL CORP., ET AL.

**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 46945
HONORABLE GLENN B. GREMILLION, DISTRICT JUDGE PRO TEMPORE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, and Billy Howard Ezell, Judges.

REVERSED AND REMANDED.

Hu'cheryl M. Walker
Attorney at Law
P. O. Box 805
Vidalia, LA 71373
(318) 336-5525
COUNSEL FOR PLAINTIFF/APPELLANT:
    Doris Bell

Sean P. Mount
Attorney at Law
1 Galleria Boulevard, Suite 1400
Metairie, LA 70001
(504) 836-6500
COUNSEL FOR DEFENDANT/APPELLEE:
 Dolgencorp, LLC d/b/a Dollar General Corporation

**PETERS, J.**

The plaintiff, Doris Bell, appeals the trial court's grant of a summary judgment dismissing her personal injury claims against the defendant, Dolgencorp, LLC d/b/a Dollar General Corporation (Dollar General). For the following reasons, we reverse the trial court judgment and remand the matter to the trial court for further proceedings.

## DISCUSSION OF THE RECORD

The incident at issue in this litigation occurred on January 13, 2011, at Dollar General's Vidalia, Louisiana store wherein Doris Bell fell. Ms. Bell had purchased some household items and had already left the store when she noticed a price discrepancy on one of her purchased items. She reentered the store from the parking lot and met with Faye Boyles, the store manager, to discuss the discrepancy. Ms. Bell accompanied Ms. Boyles to the back of the store to check the price on the merchandise, and, on the way back to the front of the store, Ms. Bell fell forward, landing on her chest and knees. On January 13, 2012, Ms. Bell filed this suit for damages against Dollar General, asserting in her petition that she sustained damages in the fall which were caused by Dollar General's negligence in failing to maintain reasonably safe conditions in its store.

Dollar General timely answered Ms. Bell's petition and, subsequently, filed a motion for summary judgment seeking dismissal of her claims. The trial court heard this motion on July 11, 2013, and, at the completion of the hearing, took the matter under advisement. On August 15, 2013, the trial court issued written reasons for judgment granting the summary judgment. That same day, the trial court executed a judgment in conformity with its reasons and dismissed Ms. Bell's suit. Thereafter, Ms. Bell perfected this appeal. In her two assignments of error, Ms. Bell asserted that the trial court erred in finding that she failed to prove the

cause of her accident; and that it erred in finding that the boxes which she tripped over did not present an unreasonable risk of harm.

## OPINION

Louisiana Code of Civil Procedure Article 966, which governs summary judgment proceedings, was significantly amended in both the 2012 and 2013 legislative sessions, and the 2012 changes were in effect at the time this matter was heard. While the summary judgment procedure is still favored and, while the goal set forth in La.Code Civ.P. art. 966(A)(2) remains the "just, speedy, and inexpensive determination of every action except those disallowed by Article 969," the requirements of proof have significantly changed.

Prior to August 1, 2012, the evidentiary burden in summary judgment matters was set forth in La.Code Civ.P. art. 966(B) (emphasis added), as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions *on file*, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.

However, one of the changes to La.Code Civ.P. art. 966 effected by 2012 La. Acts No. 257, § 1, included amending and restructuring La.Code Civ.P. art. 966(B)[1] to move the language cited above to a new subparagraph designated as La.Code Civ.P. art. 966(B)(2), but without the words "on file." To emphasize the significance of the deletion of these two words, the legislature added a subparagraph designated as La.Code Civ.P. art. 966(E)(2), which provided that "[o]nly evidence *admitted* for purposes of the motion for summary judgment *shall* be considered by the court in its ruling on the motion." (Emphasis added.) Still,

---

[1] We note that the Louisiana Legislature's amendment to La.Code Civ.P. art. 966 by 2013 La. Acts No. 391, § 1, again affected the burden of proof elements of the Article. However, the 2012 version of La.Code Civ.P. art. 966 was in effect from August 1, 2012 through July 31, 2013; thus it governs the summary judgment hearing on July 11, 2013.

2

the 2012 amendment did not change the burden of proof applicable to a motion for summary judgment:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material of fact.

La.Code Civ.P. art. 966(C)(2).

It is well-settled that "[a]ppellate review of the granting of a motion for summary judgment is *de novo,* using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate." *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566, p. 7 (La. 7/2/12), 94 So.3d 750, 755 (citations omitted). In this matter, both litigants offered, and had admitted, the evidence they considered pertinent to the trial court's decision on this matter. Thus, they recognized and complied with the evidentiary changes in La.Code Civ.P. art. 966.

### *Summary of the Evidence Presented by Dollar General*

In support of its motion for summary judgment, Dollar General initially attached the following exhibits to its motion and memorandum:

1. Ms. Bell's petition for damages.

2. Excerpts from Ms. Bell's discovery deposition taken August 2, 2012.

In Ms. Bell's petition for damages, she asserted that "she tripped and fell over boxes that were cluttering the floor and obstructing the aisle." The excerpts from her deposition addressed a number of different areas related to the litigation, and in those excerpts she testified that she had previously worked as a cashier at

the Vidalia Dollar General store on a part-time basis for two years ending in 1995, and was familiar with the store; on the day of the accident, she was following Ms. Boyles through the store and observed boxes of toys at the "end gap"[2] near where she fell, but only saw them after she fell as she turned the corner where they were stacked; and they were stacked neatly [3] and she knocked some of them down when she fell. Ms. Bell further testified in the deposition excerpts that Ms. Boyles apologized to her and explained that two days before, she had told other employees to move the boxes. According to Ms. Bell, the boxes were stacked almost waist high[4] in the edge of the aisle, and had she seen them earlier, she could have walked around them.

Later, after Ms. Bell responded to the motion, Dollar General supplemented its exhibits in support of its motion with additional excerpts from Ms. Bell's discovery deposition and with excerpts from Ms. Boyles' discovery deposition taken June 28, 2013. In the new excerpts from her deposition, Ms. Bell testified that the accident occurred two aisles from the back of the store and that she had not walked down that aisle any time that day before the accident. When questioned, she acknowledged that "[e]arlier" she had stated that she did not know "what she tripped on[,]" but further testified that she had not looked to the ground before she fell. She was immediately behind Ms. Boyles when the accident occurred and was so close that they were almost "side by side." The end result of an exchange

---

[2] Ms. Bell stated that an "end gap" is created when the merchandise overloads the shelf, and the overload is stacked on the floor near the shelf.

[3] At one point in her deposition, she described the boxes as being neatly stacked, but at another point, she suggested that she did not know how they were stacked because she did not see them before she tripped over them.

[4] Ms. Bell testified that she is five foot, two inches tall.

4

between counsel and Ms. Bell during the deposition established the boxes at issue to be approximately ten by sixteen inches in size.

In her deposition, Ms. Boyles testified that she had been working for Dollar General for approximately two years before the accident and that she was initially hired as manager of the store. She left her employment with the store because in October of 2012, she had fallen and sustained a broken arm and dislocated shoulder. According to Ms. Boyles, Dollar General terminated her employment as a result of circumstances arising after this accident. Ms. Boyles testified that on the day of Ms. Bell's accident, boxes were stacked on an end cap and were protruding from a shelf into the aisle. She did not see Ms. Bell fall, but suggested that the boxes were not difficult to see and were obvious to a person traversing the aisle. Still, she further testified that Ms. Bell told her she had tripped over the boxes.

### *Summary of the Evidence Presented by Ms. Bell*

In her opposition to Dollar General's motion for summary judgment and initial exhibit filing, Ms. Bell attached the following exhibits:

1. A copy of a letter setting the deposition of Ms. Boyles for August 2, 2012.

2. A copy of the notice setting Ms. Boyles' deposition for April 19, 2013.

3. Answers to interrogatories and production of documents propounded to Dollar General by Ms. Bell.

4. A March 14, 2013 affidavit of Faye Boyles.[5]

5. A March 12, 2013 affidavit of Doris Bell.

6. Additional excerpts from the August 2, 2012 deposition of Doris Bell.

---

[5] Dollar General filed a motion to strike this affidavit which was denied by the trial court. Dollar General did not appeal the trial court's denial and that issue is not now before this court.

At some point early in the litigation, Ms. Bell propounded at least ten interrogatories and five requests for production of documents to Dollar General. The filings attached to the opposition to the motion for summary judgment establish that Dollar General objected to even the most basic of discovery requests.[6] However, the record contains no further efforts on the part of Ms. Bell to obtain what this court would consider basic discovery information. Therefore, the issue of lack of compliance is not before us.

Ms. Boyles asserted in her affidavit that "Ms. Bell tripped and fell over some boxes that were overhung on the shelf and also located on the floor." She further stated that she advised Ms. Bell that she "had told the employees to properly stock, shelf, and clean the aisles so that incidents of this sort didn't happen." Additionally, she stated that "[a]bout a day or two prior to Ms. Bell tripping and falling over said boxes, [she] had advised the guys working in the store to move those same boxes that Ms. Bell tripped over and to place them correctly on the shelves."

Ms. Bell asserted in her affidavit that "she "tripped and fell over some boxes[,]" but that prior to that incident she did not see anything directly in front of her, but that "something sticking out from the shelf made [her] fall." It was only after she fell that she discovered the boxes on the floor.

In the additional excerpts from her discovery deposition testimony, Ms. Bell stated that when she was originally in the store she did not walk down the aisle where she ultimately fell. When counsel for Dollar General attempted to have her state that she did not know what she tripped on, she responded that she tripped on

_____

[6] Either the request was considered too broad or was considered to be the attorney work product.

boxes in the aisle. However, she further stated that she had no knowledge of prior complaints, how long the boxes were in place, or who placed them there.

*Analysis*

It is well settled that most negligence cases are resolved by applying a duty/risk analysis to the facts presented. Generally, this requires that a plaintiff establish by a preponderance of the evidence five elements: that (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach of the duty was a cause-in-fact of the plaintiff's injuries; (4) the breach of the duty was the legal cause of the harm suffered; and (5) the plaintiff suffered damages as a result of the breach. *Hanks v. Entergy Corp.*, 06-477 (La. 12/18/06), 944 So.2d 564. However, with regard to slip and fall negligence cases, La.R.S. 9:2800.6 places additional burdens of proof on the plaintiff. That statute reads as follows:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
>
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C. Definitions:

(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.

D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.

The litigants agree that in addition to the elements of proof under the duty/risk analysis, Ms. Bell has the additional burden of establishing the elements set forth in La.R.S. 9:2800.6.

As stated in *Bruno v. Albertson's, Inc.*, 97-234, pp. 3-4 (La.App. 1 Cir. 4/8/98), 708 So.2d 847, 848:

A merchant owes a duty to its patrons to maintain its floors and passageways in a reasonably safe condition. LSA–R.S. 9:2800.6. If this duty is breached and a patron sustains any harm due to a condition existing in or on the merchant's premises, the merchant is subject to a negligence claim under LSA–R.S. 9:2800.6(B). To maintain a negligence suit against a merchant, the plaintiff must prove that: (1) the condition which caused the injury created a foreseeable and unreasonable risk of harm; (2) the merchant had actual or constructive notice that the condition existed for a period of time prior to the accident; and (3) the merchant failed to exercise reasonable care. LSA–R.S. 9:2800.6(B).

On appeal, Dollar General first asserts that the summary judgment should be affirmed because, based on her own testimony, Ms. Bell cannot prove that there existed a condition in its store which caused her fall because she testified that she did not know what caused her fall. Alternately, Dollar General argues that even if Ms. Bell established that she tripped over boxes in the aisle, those boxes did not

present an unreasonable risk of harm that was reasonably foreseeable to Dollar General. The trial court agreed with Dollar General on both of these issues.

In reviewing the record de novo, we first note that Dollar General's first filing of exhibits in support of its argument contained no reference to Ms. Bell's lack of knowledge as to what had caused her fall. In fact, all of the evidence presented by Dollar General in its initial filing established only that Ms. Bell tripped over boxes in the aisle.[7] Thus, Dollar General's initial filing was not sufficient to shift the burden to Ms. Bell to prove exactly what caused her fall. La.Code Civ.P. art. 966(C)(2). The testimony relied on by Dollar General is found in its second filing which included additional excerpts from Ms. Bell's deposition, including the following exchange:

> Q. Earlier you said you didn't know what you tripped on. Is that correct?
>
> A. Yeah.
>
> Q. Okay. Did you see anything on the ground before you fell?
>
> A. No sir.

While standing alone, this testimony supports Dollar General's argument on this point. However, Ms. Bell's response to the initial filing establishes genuine issues of material fact on this issue that, if resolved in her favor at trial, would satisfy her evidentiary burden of proof. Thus, we find that the trial court erred in making a factual finding on summary judgment that Ms. Bell could not sustain her burden of proof on this issue.

Assuming, for purposes of the analysis of this summary judgment only, that Ms. Bell tripped and fell over boxes stacked in the aisle, we turn to Dollar General's argument that their presence did not constitute an unreasonable risk of

---

[7] As previously stated, the only exhibits to the original motion were Ms. Bell's original petition and excerpts from her discovery deposition.

9

harm reasonably foreseeable to Dollar General. In doing so, we note that this is not a matter of constructive notice to Dollar General as that term is defined in La.R.S. 9:2800.6(C)(1). In fact, the only evidence on notice to Dollar General is Ms. Boyles' statement in her affidavit that the boxes had been in the aisle for at least a day or two and that she had told other store employees to move the boxes and place them "correctly on the shelves." Specifically, her affidavit asserts that she instructed the employees "to properly stock, shelf, and clean the isles [sic] *so that incidents of this sort didn't happen*." (Emphasis added.) Thus, Ms. Bell made a positive showing of the existence of the condition prior to her fall. Additionally, the unreasonableness of the location of the boxes at issue is a question of fact which cannot be resolved in a summary judgment proceeding. While there is evidence to the effect that the presence of the boxes was obvious to a person traversing the aisle, there is also evidence that Ms. Bell's vision was blocked by the presence of Ms. Boyles directly in front of her. There is also evidence that Ms. Bell walked into the boxes as she turned the corner of the aisle.

Louisiana Revised Statutes 9:2800.6 does not define the term "unreasonable risk of harm[,]" but the supreme court, in the context of a claim relating to injury caused by a vice, defect, or ruin of a premises or building pursuant to La.Civ.Code arts. 2317 and 2322, stated:

> Thus, the determination of whether a particular risk of harm is reasonable is a matter wed to the facts of the case. Perhaps except only in ultrahazardous cases, it is impossible and improper to characterize a risk as unreasonable without consideration of the surrounding circumstances.

*Celestine v. Union Oil Co. of Cal.*, 94-1868, p. 8-9 (La. 4/10/95), 652 So.2d 1299, 1304.

In *Celestine*, the supreme court was evaluating the liability of the owner of the premises to an injured repairman and stated that "any per se rule that an owner may

10

never be held strictly liable to a repairman injured while repairing the alleged defect unworkable and contrary to the fact intensive nature of the definition of 'unreasonable risk.'" *Id.*

Applying the rationale of *Celestine* to the matter before us, we find that standing alone the boxes would have been open and obvious to any person in the aisle. However, the fact of the visibility of the boxes does not stand alone. Other evidence establishes genuine issues of material fact concerning the particulars of the accident which preclude summary judgment. Thus, we find that the trial court erred in factually finding that the boxes did not constitute an unreasonable risk of harm to Ms. Bell.

Finding merit in Ms. Bell's assignments of error, we reverse the trial court's judgment dismissing her suit by summary judgment and remand the matter for resolution of the genuine issues of material fact by a trial on the merits or other appropriate proceedings.

## DISPOSITION

For the foregoing reasons, we reverse the trial court's grant of summary judgment in favor of the defendant Dolgencorp, LLC d/b/a Dollar General Corporation, dismissing the claims of the plaintiff Doris Bell, and remand the matter to the trial court for further proceedings. We assess all costs of this appeal to the defendant, Dolgencorp, LLC d/b/a Dollar General Corporation.

**REVERSED AND REMANDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules —Courts of Appeal, Rule 2-16.3.

11