691 So.2d 305 (1997)
Rachel McALLISTER and Douglas McAllister, Individually, and as Administrator of the Estate of his Minor Son, Ryan McAllister
v.
Russell COATS, Marie Coats, and Rebecca Wolf, Individually, and as Administratrix of the Estate of her Minor Daughter, Jessica Wolf, and State Farm Insurance Company.
No. 96 CA 1069.
Court of Appeal of Louisiana, First Circuit.
March 27, 1997.
Rehearing Denied April 25, 1997.
*307 Gary "Ted" Chapman, Amite, for Plaintiffs/Appellees, Rachel McAllister, et al.
Iddo Pittman, Hammond, for Defendants/Appellants, Russell Coats, et al.
Before CARTER, LeBLANC and PARRO, JJ.
LeBLANC, Judge.
The issue in this appeal is whether the trial court erred in finding defendants' property contained an unreasonable risk of harm. After a thorough review of the record, we reverse.

FACTS
On Sunday, March 27, 1994, eight-year-old Ryan McAllister was playing ball with his ten-year-old cousin, Jessica Wolf, in the side yard of the home owned by the children's maternal grandparents, defendants, Russell and Marie Coats. The children, together with Ryan's parents, Jessica's mother and the Coats, had gone to church earlier that morning and afterwards, had lunch together at the Coats' home. It was a pretty day, and after lunch, Ryan and Jessica went outside to play, while the women stayed inside talking. Mr. Coats went out to the rear yard with his tractor and Ryan's father took a nap on the couch.
Outside, the children engaged in a game wherein they would throw a lightweight plastic ball onto the roof of the house and scrambled with one another to catch the ball when it rolled off the roof. The ball was then thrown back onto the roof by the person who got it; and thus, the game continued. After a short while, Ryan was running toward the house attempting to beat Jessica at catching the ball, when he tripped and fell. He fell onto a square slab of concrete at the side entrance of the house. He hit the ground, his left arm striking some rocks in a small garden to the left of the concrete, and his right arm striking a small ceramic dish which was on the concrete slab, in the left rear corner, next to the small rock garden. Upon contact, the ceramic dish broke and Ryan sustained serious injury to his right wrist and hand.

PROCEDURAL HISTORY
In November, 1994, Mr. and Mrs. McAllister, individually and as administrators of their son's estate, filed suit against Mr. and Mrs. Coats, Jessica's mother (Rebecca Wolf), and State Farm Insurance Company (the Coats' homeowner insurer) alleging both strict liability and negligence and seeking damages for the injuries sustained by Ryan.
After a trial, the trial judge found that the ceramic dish on the concrete slab in the Coats' yard created an unreasonable risk of harm and assessed fault at 85% to the defendants.[1] The trial court also found Ryan's parents were negligent in failing to inspect the area and/or supervise the children playing, and 15% fault was assessed against them. Judgment was rendered accordingly, awarding plaintiffs $42,500 in damages. The defendants appeal the finding of liability against them.

STANDARD OF REVIEW
The unreasonable character of an alleged defect must be decided on the particular facts and circumstances presented in each case; these factual findings shall not be disturbed absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). While this manifest error standard shields the factual findings of the trier of fact on appellate review, the application of those *308 facts to the final legal determination of whether a condition constitutes a defect that creates an unreasonable risk of harm to others should not be protected on appellate review by the manifest error rule, and is reviewed instead as a legal question. Green v. City of Thibodaux, 94-1000, p. 7 (La.App. 1st Cir. 10/6/95); 671 So.2d 399, 403, writ denied, 95-2706 (La.2/28/96); 668 So.2d 366; see also Boyle v. Board of Supervisors, Louisiana State University, 96-1158 (La.1/14/97); 685 So.2d 1080.

REVIEW OF FACTS
In this case, the facts are essentially undisputed. The photographs entered into evidence depict the scene of the accident, the ceramic bowl and its location consistent with the descriptions given by the witnesses' testimony. The bowl, referred to by witnesses as a cut-flower vase (consistent with its function) is approximately three inches deep and approximately four to five inches in diameter. At all pertinent times, it was located in the far left corner of the concrete slab located at the side door to the house, where, if the side door were opened, the bowl would be behind the door. The bowl is off-white in color, similar to the color of the concrete slab. Next to the slab, on the left side, is a small flower bed, containing some rocks; otherwise, the yard appears to be a flat grassy area.
The only material fact contested by the parties is the cause of Ryan's fall. The plaintiffs allege that there was an irregularity in the yard, consisting of a slight dip in elevation which resulted from a trench dug by defendant, Mr. Coats. Plaintiffs allege that the trench was improperly leveled by Mr. Coats, resulting in the dip which they contend constituted a defect which posed an unreasonable risk of harm to the children playing in the yard. The defendants maintain the boy simply tripped and fell on his own feet as he scrambled with his cousin for control of the ball. Although not specifically addressed by the trial court, its reasons for judgment reflect that the trial court's finding of liability against the defendants was based on its finding that the ceramic dish posed an unreasonable risk of harm. Implicit in this finding is the trial court's rejection of plaintiffs' argument that the yard contained a defect in the form of a dip in the yard's elevation which caused the boy to fall.
We find no manifest error in the trial court's rejection of this contention. Ryan testified that the game was essentially a competition to see who could first get the ball and he and Jessica engaged in shoving, pushing each other down, and knocking each other out of the way in order to meet this objective. He stated that he was rushing to get the ball, thinking that Jessica might beat him to it, when he tripped and fell. Initially, Ryan stated that he was not sure how or why he tripped, but that it was possible he tripped on his own feet. Later in his testimony, the boy stated that he may have stepped into a dip in the yard which caused him to fall. Upon further questioning, the boy admitted that it was his mother who found the dip much later after the accident. The following colloquy appears in the record:
Q. Because at one point you said that you fell on the dip and that you showed your mother where it was. But another time you said you didn't know why you tripped.
A. I found it out, I found out after like we went to Mr. Pittman's [defense counsel] office and then when we came back like the next month we found out what happened.
Q. How did you find out?
A. We were like swimming, it might have been next year and we were like swimming and my mom asked me to come out the pool and show her where I tripped and I found a dip.
Q. And that's when you found the dip?
A. Yes sir.
Q. Who found the dip?
A. My mom did.
Mr. and Mrs. Coats both admitted in their testimony that approximately three years prior to the accident, Mr. Coats had dug a small trench in the yard while doing some work on the sewer line, and he covered it back up with the same dirt, trying to keep the grass in the same place. Mr. Coats testified that after Ryan's accident he went out and inspected the yard. He stated that *309 the area where he dug was to the right of the door headed toward the front of the house. Upon inspection, he noticed the ground where he had dug was slightly uneven, although the grass had grown back and covered the area.
Jay Haindel, a claims adjuster for State Farm, also inspected the yard after the accident. His first visit was April 4,1994, during which he took photographs. He stated that after this visit, he told the family that he had been unable to find a defect in the premises. Then in September, 1994, he received a phone call from Mrs. Coats informing him of a gas line in the yard that her husband had dug up. Mr. Haindel returned to the yard for a second inspection. According to him, he and Mrs. Coats both looked and found nothing but "flat level grass." He stated there were a couple of uneven spots in the ground, approximately twelve to fifteen feet away from the slab which he described as "barely dips" no more than an inch deep and six to seven inches wide. He also testified that these slightly uneven areas were not in the same area that had been marked and identified by Ryan as the place where he tripped. In fact, he stated that he got down on his hands and knees and inspected the area where Ryan said he fell, but was unable to detect any irregularity in that area.
Mr. Fred H. Vanderbrook, a mechanical engineer, was hired by Mr. Haindel to inspect and investigate the premises, which he performed on October 3, 1994. He inspected, on his hands and knees, the area marked and identified by Ryan as the place where he tripped, and was unable to find any irregularities in that area. He admitted that he spotted a "very shallow, shallow trench," located approximately six to seven feet away from the concrete slab, heading toward the gravel road at the front of the house. According to Mr. Vanderbrook, this trench was no more that 5/8 of an inch at its deepest.
Based on the foregoing evidence, we cannot say the trial court committed manifest error in rejecting plaintiffs' contention that the premises contained a defect which caused Ryan to trip and fall. Ryan's testimony was inconsistent in that he stated that he did not know what caused him to fall, he may have tripped on his own feet in his rush to beat Jessica to the ball, and also that he had tripped in a dip in the yard, which his mother discovered several months after the accident. Mr. Haindel and Mr. Vanderbrook both inspected the premises on their hands and knees and neither was able to detect any irregularity in the ground in the area where Ryan fell. The record is devoid of any evidence of any other falls or accidents in the Coats' yard, although the record reflects the children had played in that same yard for years. Finally, the slight depression which was found to exist in the yard was consistent with Mr. Coats' testimony that he had done some work on the sewer line. The location of the depression was also consistent with the work done by Mr. Coats and did not coincide with the area identified by the child as the place where he fell. Therefore, we conclude the trial court's conclusion is amply supported by the record and not manifestly erroneous.

LEGAL ANALYSIS
Remaining is the issue whether the trial court committed legal error in concluding, based on its factual findings, that the ceramic dish constituted an unreasonable risk of harm. Liability for injuries sustained by one on the premises of another may be based on either strict liability or negligence; both causes of action have been alleged in this matter. The owner or person having custody of immovable property has a duty to keep such property in a reasonably safe condition. This person must discover any unreasonably dangerous condition on the premises and correct the condition or warn potential victims of its existence. This duty is the same under both the strict liability theory of La. C.C. art. 2317 and the negligence liability theory of La. C.C. art. 2315. Carter v. Board of Supervisors of Louisiana State University, 459 So.2d 1263, 1265 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1248 (1985). Under either theory of liability, the plaintiff has the burden of proving that (1) the thing which caused damages was in the care, custody and control of the defendant; (2) the thing had a vice or defect which created an unreasonable risk of harm *310 to persons on the premises; and (3) the defect in the property was a cause-in-fact of the resulting injury. Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106, 1112 (La.1990). There is a difference in proof between these two theories of liability, however, in that under La. C.C. art. 2315, the plaintiff must show that the owner or custodian either knew or should have known of the defect, whereas under La. C.C. art. 2317, the plaintiff is relieved of proving scienter on the part of the defendant. Kent v. Gulf States Utilities Company, 418 So.2d 493, 497-498 (La.1982).
Plaintiffs' allegations of strict liability are based on their contention that a dip in the yard constituted an inherent defect; the trial court rejected this and we found no manifest error in that finding. Additionally, it is undisputed that Mrs. Coats knew that the ceramic dish was on the concrete slab outside the door. She testified that the vase, containing fresh flowers had been a gift to her mother during a hospital stay. Mrs. Coats brought it home with her, dumped out the flowers into a trash can outside by the door, rinsed out the vase with an outdoor faucet, also located by the door, and placed it on the concrete slab to dry. Thus, the scienter factor required to prove negligence is satisfied. Therefore, we now address plaintiffs' allegations of liability on the basis of negligence, pursuant to La. C.C. art. 2315, and examine whether the ceramic dish created an unreasonable risk of harm, applying a duty-risk analysis. See Fontenot v. Fontenot, 93-2479, p. 3-4 (La.4/11/94); 635 So.2d 219, 221-22.
A determination of whether a thing presents an unreasonable risk of harm is made by balancing the gravity and risk of harm, individual and societal rights and obligations, and the social utility involved. This determination should be made "in light of all the relevant moral, economic, and social considerations." Boyle v. Board of Supervisors, Louisiana State University, 96-1158 p. 3 (La.1/14/97), 685 So.2d 1080, 1082 (citations omitted).
The gravity of the injury was somewhat substantial; Ryan sustained serious injuries to his right hand and wrist which required a two-and-a-half-hour surgery and resulted in reduced function of the hand and alleged partial disability.
The risk of injury, however, was very slight. The testimony established that the children had played in their grandparents' side yard for years, and there is absolutely no history of accidents or injuries occurring in the yard prior to Ryan's fall in March, 1994. There is, likewise, an absence of evidence regarding any "trip and fall" incidents on, near or around the concrete slab in the more than twenty years the Coats lived in the home. Furthermore, although it may have been foreseeable that the children may stumble and fall while playing in the yard, it was not reasonably foreseeable that the children's play would encompass running directly toward the house or toward the concrete slab, because there would be nowhere to go in that direction. The risk of injury is further minimized by the location of the ceramic dish; it was placed in a corner of the slab, away from any ingress/egress traffic from the door. Further, it was placed in such a way that when the door was opened, the dish would be behind the door. Finally, the size and shape of the dish further minimize the risk of injury. Given that the dish was, at most, several inches in diameter and a couple of inches deep, it was practically unforeseeable that as a result of a trip and fall, part of the victim's body would land in contact with a small dish in the far back corner of the slab, almost abutting the house.
Finally, the ceramic dish, used to hold cut flowers, is not without social utility. It not only has a practical function, but being decorative ceramic pottery, it provides aesthetic benefits of art. More importantly, however, is the social consideration against imposing liability on a homeowner on the basis of ordinary household accoutrements, particularly in a case such as this where the foreseeability and risk of harm is so minimal. The fact of an accident, alone, does not justify an imposition of liability, particularly considering the normal hazards of childhood, and the reasonable risks of harm associated therewith. See Broussard v. Pennsylvania Millers Mutual Insurance Company, 406 *311 So.2d 574, 576 (La.1981). Thus, we conclude that the trial court's determination that the ceramic dish presented an unreasonable risk of harm was legal error. To impose liability under the facts and circumstances of this case would be tantamount to extending the duty of homeowners to protect against any and all imaginable risks of harm. Not only would this lead to an unnecessary sterilization of our environment, it is contrary to law. Accordingly, the judgment of the trial court finding defendants 85% at fault for Ryan McAllsiter's injuries is reversed. Costs of this appeal are assessed to the plaintiffs.
REVERSED.
NOTES
[1] Rebecca Wolf, Jessica's mother and Mrs. Coats' other daughter, was a named defendant as she resided in the home with the Coats; thus the judgment was rendered against her as well.