744 So.2d 206 (1999)
Eula M. WILLIAMS and Joseph Taylor
v.
LEONARD CHABERT MEDICAL CENTER a/k/a S.L.M.C., Division of Hospitals, Louisiana Health and Human Resources Administration, Gulf South Risk Services, ABC Insurance Company.
No. 98 CA 1029.
Court of Appeal of Louisiana, First Circuit.
September 26, 1999.
Rehearing Denied November 30, 1999.
*207 Jerri G. Smitko, Houma, Counsel for Plaintiff/Appellee Eula M. Williams.
Elizabeth C. Lanier, Assistant Attorney General, Lafayette, Counsel for Defendant/Appellant State of Louisiana Through Department of Health and Hospitals.
Before: FOIL, FOGG, KUHN, GUIDRY, and WEIMER, JJ.
WEIMER, J.
This is an appeal of a judgment in favor of plaintiff, Eula Mae Boudreaux Williams,[1] holding defendant, State of Louisiana, through Leonard Chabert Medical Center (LCMC),[2] liable for personal injury sustained in an October 10, 1994 fall on defendant's parking lot. The case went to a bench trial with the State, through the Louisiana Health Care Authority, as the only defendant.
The trial court ruled that: 1) in defendant's parking lot near the curbing, there was a height difference in two panels of concrete, separated by an expansion joint, which constituted a defect; 2) the defect caused the injuries that plaintiff suffered; 3) the hospital was put on notice of the defect, as this concrete surface had been in place since 1977; 4) the hospital's inspection procedure was inadequate and tantamount to no inspection at all; 5) there were no signs or other warnings about the defect, although warning signs would have been easy to provide; 6) to reach the clinic, plaintiff had to traverse the concrete area involved, which was a roadway, because there was no sidewalk from a new parking area to the entrance to the clinic; *208 7) because she was in a roadway, it was reasonable for her to walk near the curbing, and her actions were not unreasonable; 8) the plaintiff tripped and her shoe remained in place at the expansion joint; 9) for her shoe to have remained at the obstruction, there must have been a "significant defect," consistent with the plaintiff's proof; and 10) the fact that the plaintiff was going to the hospital distinguishes her case from the "normal" case of someone tripping on a sidewalk.[3] The trial court judge indicated that, having found the hospital had notice of the defect, he considered all the factors required to determine whether the defect presented an unreasonable risk of harm and weighed the risk of harm against the utility of the hospital and the value to society that is served by the furnishing of "these particular services in these particular facilities."
Having perfected this appeal, LCMC assigns the following errors:
A. The judge committed legal error when he did not determine that the hospital exercised its duty of providing reasonable care for the safety of its visitors/invitees/pedestrians commensurate with the particular circumstances involved.
B. The Judge committed legal error when he did not consider or apply the unreasonable risk of injury element in rendering his decision.
C. The Judge committed legal error when he did not consider or apply the unreasonably dangerous condition element in rendering his decision.
D. The judge committed manifest error when he determined that the difference in height between the two cement slabs [at] the expansion joint created an unreasonable risk of harm.
E. The judge committed manifest error when he determined that the hospital had notice of the defect and had adequate time to remedy the situation.
F. The judge committed manifest error in not assessing comparative fault to Mrs. Williams.
Finding merit in LCMC's assigned error "D," we pretermit discussion of the other errors and reverse the judgment.

FACTS AND TRIAL TESTIMONY
On the day of the accident, 76-year-old Ms. Williams and her daughter, Ms. Debra Bonvillain, parked in a newly constructed parking lot at LCMC. Ms. Williams had an 8:00 a.m. appointment at the LCMC clinic. The new parking area, which was opened for parking approximately two weeks prior to the accident, was on the hospital grounds. The uncompleted part of the construction project was the installation of a sidewalk from the lot to the clinic. Thus, the two ladies walked along the curbing of a two-lane roadway which ran throughout the hospital grounds and was considered part of the hospital parking facilities. The roadway, with the expansion joint in question, was constructed in 1977. At the time of the accident, there was no on-going construction and the area was clear of debris.
As the two ladies walked along, Ms. Williams was next to the curb and Ms. Bonvillain was on her other side. Ms. Bonvillain testified they were not rushing *209 as they had plenty of time to get to the appointment. Ms. Williams, who was wearing "tennis shoe" type footwear with velcro closings, tripped at the expansion joint and fell forward. Her foot came out of her shoe, which remained at the expansion joint. Although Ms. Bonvillain testified there was traffic passing after the fall and before anyone came to their aid, no one testified about traffic prior to the accident which could have caused the ladies to be distracted from watching their pathway.
Troy Ledet, administrative director of plant operations at LCMC, testified at trial that he and an engineer and architect measured the entire expansion joint and determined the difference in height ranged from ¼ to ½ inch. In her own testimony, Ms. Williams did not give any estimate as to the difference between the two portions of concrete. However, Ms. Bonvillain testified it was 1½ inches. Although the court did not articulate the difference in inches, the court specifically stated it accepted the plaintiff's version of the accident, which is an inference of a 1½ inch difference.

UNREASONABLY DANGEROUS DEFECT
The only issue before us in this appeal is whether the uneven portion of the pavement at LCMC was a condition that presented an unreasonable risk of harm to persons entering the hospital for medical appointments. In the absence of a defective condition that might produce an unreasonable risk of harm, consideration of the issue of actual or constructive notice is pretermitted. See Borruano v. City of Plaquemine, 97-1926, pp. 4-5 (La.App. 1 Cir. 9/25/98), 720 So.2d 62, 64.
The owner or person having custody of immovable property has a duty to keep such property in a reasonably safe condition. This duty is the same under both the strict liability theory of LSA-C.C. art. 2317 and the negligence liability theory of LSA-C.C. art. 2315. McAllister v. Coats, 96-1069, p. 7 (La.App. 1 Cir. 3/27/97), 691 So.2d 305, 309, writ denied, 97-1356 (La.9/5/97), 700 So.2d 513.
Under both theories, the absence of an unreasonably dangerous condition of the thing implies the absence of a duty on the part of the defendant. Oster v. Department of Transportation and Development, State of Louisiana, 582 So.2d 1285, 1288 (La.1991). A determination of whether a thing presents an unreasonable risk of harm involves numerous considerations and cannot be applied mechanically. Id. In addition to balancing the likelihood and magnitude of harm against the utility of the thing, the trier of fact should consider a broad range of social, economic, and moral factors including the cost to defendant of avoiding the risk and the social utility of plaintiff's conduct at the time of the accident. Id. at 1289.
The size of the defect in an area where people walk is of primary importance in determining if a landowner has breached a duty to a pedestrian. The Louisiana Supreme Court has cautioned:
It is common for the surfaces of streets, sidewalks, and parking lots to be irregular. It is not the duty of the party having garde of the same to eliminate all variations in elevations existing along the countless cracks, seams, joints, and curbs. These surfaces are not required to be smooth and lacking in deviations, and indeed, such a requirement would be impossible to meet.
Reed v. Wal-Mart Stores, Inc., 97-1174, p. 2 (La.3/4/98), 708 So.2d 362, 363.
Likewise, a public entity, such as a university or a state hospital, has a duty to keep its premises in a condition that does not present an unreasonable danger to the persons who use them, but has no duty to eliminate all variations in elevation existing along its sidewalks. See White v. City of Alexandria, 216 La. 308, 43 So.2d 618, 620 (1949), wherein the court stated a public entity is not an insurer of the safety of pedestrians. Courts have consistently held that state entities are not liable for *210 every irregularity in an area where people walk. Boyle v. Board of Supervisors, Louisiana State University, 96-1158, p. 3 (La.1/14/97), 685 So.2d 1080, 1082. Walkways must be reasonably safe, but need not be in perfect condition.
The Louisiana Supreme Court in White found that the difference in elevation of a sidewalk, which varied from one-half to two inches, did not alone create an unreasonable risk of harm to a pedestrian.[4] The record in the instant case contains testimony of hospital personnel that they made actual measurements and found a difference in elevations of one-half inch at most. Ms. Bonvillain testified that she was confident of her ability to estimate a one and a half inch difference although she had never physically measured it. Thus, the defect in the instant case could not have been more than one and a half inches.
We are not impressed with the trial court's drawing an inference of a "substantial" defect from the fact that Ms. Williams's shoe came off her foot and remained at the expansion joint when she fell. The shoe could have come off her foot simply because the shoe had a velcro closure instead of being laced, depending upon how tight the shoe was. The force of the fall and the movement of Ms. Williams's body could have caused the shoe to come off, regardless of the existence of any defect in the walkway. Furthermore, because the record does not support a difference in elevation more than 1 ½ inches, a label such as "substantial" is vague and ambiguous and not determinative of an unreasonably dangerous condition. Therefore, the height difference may have been a defect which caused Ms. Williams to fall, but the defect was not unreasonably dangerous.
The number of accidents caused by a defect on premises is another factor in determining whether a risk of harm is unreasonable. Buchert v. State, Department of Recreation and Tourism, Office of Tourism, 95-0924, p. 4 (La.App. 4 Cir. 1/31/96), 669 So.2d 527, 529, writ denied, 96-0534 (4/8/96), 671 So.2d 341. In Buchert, the plaintiff tripped on a handicap access ramp, and the appellate court held the trial court was clearly wrong in finding the likelihood of harm outweighed the utility of the ramp. The state facility in that case and the state hospital in the instant case were both areas of high pedestrian traffic. The lack of prior accidents is an important factor to be considered in evaluating the risk of harm. It appears the trial court in the instant case failed to take into account that there was no evidence introduced to establish there were any prior accidents in this area of high pedestrian traffic since its construction in 1977.
Additionally, the trial court indicated it considered the social utility of the hospital in general,[5] but there is no indication the trial court considered the utility of the parking lot and the expansion joint. The Louisiana Supreme Court has commented on the utility of paved parking and expansion joints, as follows:
[T]he utility of paved parking lots is clearly apparent as unpaved parking lots would present far more hazards: potholes, wheel ruts, erosion damage, and infinite variations in elevation. As to the specific utility of expansion joints, they are necessary for safety and for *211 maintenance of larger paved surfaces. The expansion joints allow for the concrete to expand and contract as it heats and cools due to weather. Absent the joints, the concrete blocks would contract and subsequently crack and split in the cold. Subjected to heat, the concrete would press against each other, cracking, shifting and buckling, which would produce far more hazardous deviations than the minor ¼ to ½ inch variation at issue here. Additionally, the cost of maintaining such an area would be prohibitive as it would necessitate frequent replacement of the fragmented concrete blocks. The utility of the expansion joint is clear.
Reed v. Wal-Mart Stores, Inc., 97-1174 at 6-7, 708 So.2d at 366.
In a trip and fall case, the duty is not solely with the landowner. A pedestrian has a duty to see that which should be seen and is bound to observe his course to see if his pathway is clear. Carr v. City of Covington, 477 So.2d 1202, 1204 (La. App. 1 Cir.1985), writ denied, 481 So.2d 631 (1986). The degree to which a danger may be observed by a potential victim is one factor in the determination of whether the condition is unreasonably dangerous. Wallace v. Slidell Memorial Hospital, 509 So.2d 69, 72 (La.App. 1 Cir.1987). A landowner is not liable for an injury which results from a condition which should have been observed by the individual in the exercise of reasonable care or which was as obvious to a visitor as it was to the landowner. Barnes v. New Hampshire Insurance Company, 573 So.2d 628, 630 (La.App. 2 Cir.1991).
In the instant case, photographs of the area where Ms. Williams fell were introduced into evidence. It is apparent from the photographs that there is a difference between the height of the concrete on the sides of the expansion joint, but what is obvious in the photographs was also obvious to Ms. Williams on the day of the accident. Our review of the photographs indicates that the expansion joint was clearly visible, open and obvious. Although Ms. Williams has this court's sympathy for the serious injury she incurred, there is no basis for holding the hospital responsible for what she should have seen, but failed to see. The fact of an accident, alone, does not justify an imposition of liability, particularly considering the normal hazards pedestrians face while traversing sidewalks and parking lots in this state. See McAllister v. Coats, 96-1069 at 9, 691 So.2d at 310-311. There is no evidence in the record that Ms. Williams's view of the roadway was impaired at 8:00 a.m. on the day of the accident. Cf. Wall v. Village of Tallulah, 385 So.2d 905, 907-908 (La.App. 2 Cir.), writ denied, 393 So.2d 737 (1980) (wherein a two inch raised portion of a sidewalk was found to be unreasonably dangerous considering the poor visibility of the defect to a pedestrian who tripped at 9:30 p.m.). Nevertheless, the fact that a pedestrian falls does not elevate the condition of the walkway to an unreasonably dangerous defect, even if the accident occurs at night. See Williams v. Orleans Parish School Board, 541 So.2d 228, 230-231 (La.App. 4 Cir.1989).
Additionally, the fact that the condition was visible to Ms. Williams makes a warning by the hospital unnecessary. It is simply not necessary to warn about each and every height differential in a walkway surface and to require such a warning would be unreasonable.
Finally, we note that we do not live in a perfect world. We cannot impose a duty on a landowner to have perfectly flawless premises. Sidewalks and parking lots are not always level, and individuals must assume some responsibility for their own safety. Everyday life presents risks which must be encountered and negotiated.
The expansion joint was open and obvious; there was no proof of prior accidents at this site since its construction approximately twenty years before the fall. In weighing these and other factors to determine *212 whether an unreasonably dangerous defect existed, the trial judge afforded insufficient weight to the utility of the expansion joint and paved surface and afforded excessive weight to the risk of harm. Thus, the trial court's determinations that the site of the fall was an unreasonably dangerous defect is manifestly erroneous. See Reed v. Wal-Mart Stores, Inc., 97-1174 at 7-8, 708 So.2d at 366.
We have thoroughly reviewed the record in this case, and find that even accepting the facts as plaintiff presented them and as found by the trial court, there is no basis for liability. We reverse the judgment of the trial court, dismiss plaintiff's claim, and assess plaintiff with costs of this appeal.
REVERSED AND RENDERED.
GUIDRY, J., dissents and adopts reasons assigned by Judge KUHN.
KUHN, J., dissents and assigns reasons.
KUHN, Judge, dissenting.
The majority relies on the factual analysis in Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98); 708 So.2d 362, to reverse the trial court's factual determination that plaintiff was presented with an unreasonable risk of harm. The majority, however, overlooks the ultimate holding in Reed is that the issue of whether a defect constitutes an unreasonable risk of harm is a factual determination and, as such, is subject to the manifestly erroneous/clearly wrong standard of review.
Nothing in the analysis undertaken by the majority establishes that the trial court's finding, under the facts of this case, is clearly wrong, manifestly erroneous or lacking an evidentiary basis. Indeed, in relying solely on a factual conclusion in Reed, the majority's approach indicates that, as a matter of law, any defendant is immune from liability when any plaintiff avers that the alleged defect involves an expansion joint or the surfaces of streets, sidewalks or, as in this case, parking lots. The majority ruling converts these facts into a legal proposition no matter what context the alleged defect may be present in.
In this case presently before us, a reasonable factual basis exists to support the trial court's conclusion that the seventy-six year old plaintiff was presented with an unreasonable risk of harm by the joining of the concrete in this road surface to the expansion joint as she walked from the hospital parking lot to the hospital. See Stobart v. State, 617 So.2d 880 (La.1993). As such, an appellate court should not substitute its judgment for that of the trial court. Reed should not be relied on, as the majority does, to use the facts of that case to create a rule of law in all future cases. Accordingly, I dissent.
NOTES
[1] At the time suit was filed, Ms. Williams was married to Joseph Taylor, who is named as a party plaintiff in the caption. However, the couple divorced prior to trial. Judgment in plaintiff's favor was rendered without any mention of Mr. Taylor.
[2] The plaintiffs named as defendants: the State of Louisiana, through its Department of Health and Human Resources, Office of Hospitals, Leonard Chabert Medical Center, a/k/a S.L.M.C.; Gulf South Risk Services and ABC Insurance Companies. The State answered on behalf of the Louisiana Health Care Authority, which is the proper party to sue when LCMC is named as a defendant. The Office of Risk Management, as the insurer of the state hospital, was incorrectly listed as ABC Insurance Companies, but because it was not a proper party, no answer was filed on its behalf. Gulf South Risk Services did not make an appearance.
[3] The trial court did not elaborate on this conclusion, and we did not find any support for it in our review of the record or in the jurisprudence. We acknowledge that another panel of this court recently decided that a 1 3/16 inch irregularity in a walkway at a private business location was not unreasonably dangerous. In so holding, the author of the opinion stated that had the depression been located at a hospital or health care facility, the circumstances would have been different and may have been an unreasonable risk of harm to patients. Summerville v. Louisiana Nursery Outlet, Inc., 95-2224, p. 6 (La.App. 1 Cir. 6/28/96), 676 So.2d 238, 241, n. 3, writ denied, 96-1921 (11/1/96), 681 So.2d 1263. However, that statement was dicta and not supported with any authority. Cf. Wallace v. Slidell Memorial Hospital, 509 So.2d 69 (La.App. 1 Cir. 1987), (the condition of the parking lot was the determinative factor in finding liability, not the nature of the defendant's business as a health care facility.)
[4] In White, despite a finding that the sidewalk had an elevation between two concrete sections which varied from one-half to two inches, the municipality was not liable because the defect was obvious and there were no prior accidents at this site of substantial pedestrian traffic. Thus, there is no fixed rule for determining what is a dangerous defect in a sidewalk, that renders the landowner responsible in damages to a pedestrian injured as a consequence thereof; the facts and surrounding circumstances of each particular case control. White v. City of Alexandria, 216 La. at 315, 43 So.2d at 620.
[5] The court stated it was considering "all the factors as to whether this was an unreasonable risk of harm and the utility of the hospital and the value to society that is served by the furnishing of these particular services in these particular facilities."