818 So.2d 163 (2002)
Lucille VINCCINELLI and Patsy Johnson
v.
Mrs. Joseph L. MUSSO and Allstate Insurance Company
No. 2001 CA 0557.
Court of Appeal of Louisiana, First Circuit.
February 27, 2002.
*164 T. Habersham Setze, Baton Rouge, Counsel for Plaintiffs/Appellees Lucille Vinccinelli and Patsy Johnson.
Robert J. Burns, Jr., Baton Rouge, Counsel for Defendants/Appellants Mrs. Joseph Musso and Allstate Insurance Company.
Before: CARTER, C.J., WHIPPLE and LANIER,[1] JJ.
LANIER, J.
This is a suit for damages in tort, pursuant to La. Civ.Code arts. 2315 and 2317.1, brought by a sitter/companion against her elderly Alzheimer's patient and the patient's homeowner's insurer. Defendants answered denying liability and, alternatively, averring that plaintiff was guilty of substantial comparative fault. After a bench trial, judgment was rendered in favor of plaintiff in the amount of $67,500, which represented a reduction of 50% as a consequence of plaintiff's comparative negligence. Defendants filed a suspensive appeal.[2]

FACTS
On March 15, 1999, Lucille Vinccinelli was injured when she slipped and fell on a small amount of ice cream on the kitchen floor of Mrs. Joseph Musso's home. Mrs. Vinccinelli was working at the time as a sitter/companion to Mrs. Musso, who suffered from Alzheimer's disease.[3] Her services were contracted for by the patient's son through an agency that keeps a registry of sitters for hire.[4] Vinccinelli had been taking care of Mrs. Musso for four years. She admitted that she considered it part of her job to clean up after Mrs. Musso as needed.
On the day of the accident, Mrs. Musso went into the kitchen and got herself a bowl of ice cream. This was not unusual, as Mrs. Musso was ambulatory and could do some things on her own. An hour or so later, plaintiff slipped on a small amount of ice cream that Mrs. Musso evidently spilled on the kitchen floor. Plaintiff was aware of Mrs. Musso's diminished mental capacity. When asked if she knew if Mrs. *165 Musso had seen the ice cream on the floor before the fall she replied:
"No. She didn't pay any attention. She wouldn't have paid any attention to it, I don't believe, if she had seen it."

LIABILITY
Defendant contends the trial judge erred in finding that Mrs. Musso owed a duty to protect plaintiff against the particular risk encountered, in finding that there was a dangerous condition on the premises, and in finding Mrs. Vinccinelli only 50% at fault.
In any tort case, the proper methodology for analysis begins with answering the following questions:
1. Was the conduct in question a cause-in-fact of the resulting harm?
2. What, if any, duties were owed by the respective parties?
3. Were the requisite duties breached?
4. Was the risk, and the harm caused, within the scope of protection afforded by the duty breached?
Smith v. State Through Dept. of Public Safety, 620 So.2d 1172, 1182 (La.App. 1 Cir.1992). In this case, it is undisputed that plaintiff slipped on a small amount of ice cream spilled by Mrs. Musso. Thus, the conduct in question was a cause-in-fact of the injury. The primary issue presented for our review is whether, under the particular facts and circumstances of this case, the patient owed a duty to her care-giver to protect against such an accident.[5]
The general rule is that the owner or person having custody of immovable property has a duty to keep such property in a reasonably safe condition. He must discover any unreasonably dangerous condition on his premises and either correct the condition or warn potential victims of its existence. Farr v. Montgomery Ward and Co., Inc., 430 So.2d 1141, 1143 (La.App. 1 Cir.), writ denied, 435 So.2d 429 (La.1983). This duty is the same under the strict liability theory of LSA-C.C. art. 2317 and the negligence liability theory of LSA-C.C. art. 2315. Williams v. Leonard Chabert Medical Center, 98-1029, p. 5 (La.App. 1 Cir. 9/26/99), 744 So.2d 206, 209, writ denied, XXXX-XXXX (La.2/18/00), 754 So.2d 974. Under either theory, the plaintiff has the burden of proving that: (1) the property which caused the damage was in the "custody" of the defendant;[6] (2) the property had a condition that created an unreasonable risk of harm to persons on the premises; (3) the unreasonably dangerous condition was a cause in fact of the resulting injury; and (4) that defendant had actual or constructive knowledge of the risk. See Farr, 430 So.2d at 1143 (La.App. 1 Cir.), writ denied, 435 So.2d 429 (La.1983) and La. Civ.Code art. 2317.1.[7]
The absence of an unreasonably dangerous condition implies the absence of a duty on the part of the defendant. Oster v. Department of Transp. and Development, State of La., 582 So.2d 1285, 1288 (La.1991). A determination of whether there is an unreasonable risk of harm involves numerous considerations and cannot *166 be applied mechanically. Claims and interests should be balanced, the risk and gravity of harm should be weighed, and individual and societal rights and obligations must be considered. See Entrevia v. Hood, 427 So.2d 1146, 1149 (La.1983); Batiste v. Bevan, 634 So.2d 893, 896-897 (La.App. 1 Cir.1993).
The determination of whether a particular risk of harm is reasonable is a matter wed to the facts of the case. In general, it is improper to characterize a risk as unreasonable without considering the surrounding circumstances. Celestine v. Union Oil Co. of California, 94-1868, pp. 8-9 (La.4/10/95), 652 So.2d 1299, 1304. A court must determine whether the risk is unreasonable vis-a-vis the particular plaintiff involved. In doing so, it is appropriate to consider any contractual obligations owed by the plaintiff to the defendant with respect to the particular risk that resulted in harm. A court should also consider any specialized or superior knowledge the plaintiff may have. The status of the plaintiff is a factor to be considered in the fact-specific determination of whether a risk is unreasonable. See Celestine, 652 So.2d at 1304-06. In Celestine, for example, the Louisiana Supreme Court held that the risk of injury in connection with a broken handrail was not unreasonable vis-a-vis the repairman contractually obligated to repair it. Celestine, 652 So.2d at 1306.
The record reflects that Lucille Vinccinelli had the contractual duty of taking care of Mrs. Musso. She admitted that she considered it part of her job to clean up after Mrs. Musso if she made a mess. Plaintiff had been caring for Mrs. Musso for four years before the accident in question. She was familiar with the premises and her patient's habits. She knew that Mrs. Musso might get ice cream on her own, and she knew that if she spilled some, she would not pay attention to the spill because of her disease. Just as in Celestine, the risk plaintiff encountered was one of the types of risks she was contractually obligated to guard against. Because of the special status and job responsibilities of the plaintiff in this case, the risk from a small spill occasioned by the patient was not unreasonable vis-a-vis this particular plaintiff. Under all of the facts and circumstances, Mrs. Musso did not owe a duty to her caregiver, Mrs. Vinccinelli, to guard against the particular risk that gave rise to the injury. Further, plaintiff herein did not establish a duty owed by the defendant-patient or any breach thereof, for the reasons set forth in Batiste v. Bevan. The trial court judgment is wrong as a matter of law.
The trial judge relied on the common law rule embodied in Restatement (Second) of Torts, § 283B that provides that "[u]nless the actor is a child, his insanity or other mental deficiency does not relieve the actor from liability for conduct which does not conform to the standard of a reasonable man under like circumstances". The rule is not founded upon actual culpability on the part of the mentally deficient tort-feasor, but upon public policy considerations. Creasy v. Rusk, 730 N.E.2d 659, 664 (Ind.2000). The policy reasons most often cited to justify the rule are that it allocates the loss between two innocent persons to the party that occasioned the loss; it provides an incentive to those responsible for people with disabilities and those interested in their estates to prevent harm; it removes the potential inducement to tort-feasors to fake "... mental disability; it avoids problems of proof; and it forces persons with disabilities to pay for the damages they do." Creasy, 730 N.E.2d at 664.
Even in those jurisdictions that follow the Restatement rule, courts have held that Alzheimer's patients who have no capacity *167 to control their conduct do not owe a duty to protect caregivers from injuries suffered in attending to them, because the factual circumstances negate the policy rationales that would otherwise support the rule. Creasy, 730 N.E.2d at 667 (Ind. 2000); Colman v. Notre Dame Convalescent Home, Inc., 968 F.Supp. 809, 814 (D.Conn.1997); Gould v. American Family Mut. Ins. Co., 198 Wis.2d 450, 543 N.W.2d 282, 287 (1996); Herrle v. Estate of Marshall, 45 Cal.App.4th 1761, 53 Cal. Rptr.2d 713, 719 (1996); review denied, (Cal.1996). Mujica v. Turner, 582 So.2d 24, 25 (Fla.App. 3 Dist.1991); review denied, 592 So.2d 681 (Fla.1991). Courts presented with the issue have generally noted that the caregiver plaintiff is not a member of the public at large who is unable to safeguard against the risks of harm encountered. In Creasy, the court particularly noted that the inability of the patient to comprehend the circumstances of his relationship with others is the very reason that a caregiver is employed. The caregiver is in the superior position to prevent injury and to avoid the risks associated with the responsibilities of that position.[8]Creasy, 730 N.E.2d at 667. Thus, even in jurisdictions following the Restatement rule, courts have reached the same conclusion we reach under civilian analysis that no duty is owed under the facts and circumstances of a case like this.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed, and judgment is rendered in favor of the defendant, Allstate Insurance Company, and against the plaintiff, Mrs. Vinccinelli, dismissing her petition with prejudice. The plaintiff-appellee, Mrs. Vinccinelli, is cast for all costs of these proceedings.
REVERSED AND RENDERED.
NOTES
[1] The Hon. Walter I. Lanier, Jr., Judge (retired), is serving Pro Tempore by special order of the Louisiana Supreme Court.
[2] Patsy Johnson, plaintiff's daughter, joined in plaintiff's suit. However, the judgment rendered was silent with respect to her claims. In accordance with a stipulation of the parties, Lucille Vinccinelli's claims against Mrs. Musso were dismissed and judgment was rendered solely against her insurer.
[3] By the time of trial in October 2001, Mrs. Musso was in the late stages of her disease and was unable to communicate. She did not testify at trial.
[4] Defendants do not contest plaintiff's right to pursue an action in tort instead of being limited to workers' compensation benefits.
[5] The existence of a duty is a question of law. Hardy v. Bowie, 98-2821, p. 12 (La.9/8/99), 744 So.2d 606, 614; Paul v. Louisiana State Employees Group Ben. Program, 99-0897, p. 9 (La.App. 1 Cir. 5/12/00), 762 So.2d 136, 143.
[6] It is undisputed that Mrs. Musso had custody of the premises. For a discussion of who is considered as having the "garde" of a thing, see Smith, 620 So.2d at 1183-1184.
[7] See also Collins v. Christophe, 479 So.2d 537 (La.App. 1 Cir.1985), writ denied, 483 So.2d 1021 (La.1986) which explains the distinction between a defect in the premises and a dangerous condition on the premises.
[8] The Creasy court further noted that in that state the worker's compensation system rather than the tort system exists to cover such employment-related losses.