878 So.2d 615 (2004)
Donnie Eunelle BOZEMAN, Individually and as Administratrix for the Succession of Bree D. Hull and Gary Stephen Gomez
v.
SCOTT RANGE TWELVE LIMITED PARTNERSHIP.
No. 2003 CA 0903.
Court of Appeal of Louisiana, First Circuit.
April 2, 2004.
Rehearing Denied June 28, 2004.
*616 William T. Lowrey, Jr., Baton Rouge, for Plaintiff-Appellant Donnie Eunelle Bozeman.
Sidney L. Shushan, New Orleans, for Defendant-Appellee Scott Range Twelve Limited Partnership.
Before: PETTIGREW, DOWNING, and McCLENDON, JJ.
PETTIGREW, J.
In this case, plaintiffs challenge the trial court's judgment granting summary judgment in favor of defendant and dismissing their claim for damages. For the reasons that follow, we reverse and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY
According to the record herein, Scott Range Twelve Limited Partnership ("Scott *617 Range") owns a tract of land located on the southwest corner of the intersection of South Range Road and Interstate 12 ("I-12") in Denham Springs, Louisiana. Scott Range uses this property for various commercial business ventures, including the sale of fireworks. Toward the rear of the property, there is a large borrow pit, approximately 25 feet in depth. The borrow pit is accessed by a gravel roadway that leads from South Range Road onto Scott Range's property and ends at the pit.
On March 6, 1996, Bree D. Hull was driving her vehicle in a westerly direction on the gravel roadway in question. Her daughter, Cassandra B. Hull, was a passenger in the vehicle. As Ms. Hull proceeded to the end of the gravel roadway, she drove into the borrow pit, and her vehicle became submerged. Ms. Hull and her daughter both drowned. Following their deaths, Ms. Hull's parents, Donnie Eunelle Bozeman and Gary Stephen Gomez, brought a wrongful death and survival action on her behalf against Scott Range.
Scott Range answered plaintiffs' petition, generally denying the allegations contained therein. Thereafter, Scott Range moved for summary judgment, arguing that the borrow pit was an open and obvious hazard, thus warranting summary judgment in favor of Scott Range. In support of its motion for summary judgment, Scott Range introduced the following exhibits: 1) the affidavit of Dr. Jimmy B. Smith, a partner in Scott Range; 2) the affidavit of Alvin Fairburn, a licensed surveyor who prepared a sketch of the property in question, a copy of which was annexed to his affidavit; 3) the affidavit of Coley A. Scott, a partner in Scott Range; 4) two affidavits from Deputy Perry N. Rushing, concerning the location of the borrow pit and his inspection of Ms. Hull's vehicle following the accident; 5) the affidavit of Detective Chucky Watts regarding the location of the borrow pit; and 6) two affidavits from Officer Ronald Cotton, concerning the location of the borrow pit and his investigation of the accident, with a copy of the accident report attached thereto.
Plaintiffs filed a memorandum in opposition to Scott Range's motion for summary judgment. Plaintiffs alleged that the evidence before the trial court was of sufficient quantity and quality such that a reasonable fact finder could conclude plaintiffs would be able to satisfy their evidentiary burden of proof at trial, i.e., that the borrow pit was obscured and not visible at the time of the accident. Thus, plaintiffs argued, summary judgment was not appropriate. In support of their position, plaintiffs introduced the following exhibits: 1) the affidavit of Donnie Eunelle Bozeman; 2) the affidavit of Harry Aldrich Bozeman, III, Mrs. Bozeman's husband and Ms. Hull's stepfather; and 3) the affidavit of Sandra Smith Welch, a friend of Ms. Hull's.
On December 9, 2002, the trial court heard arguments on the motion for summary judgment. After considering the applicable law and the evidence in the record, the trial court granted Scott Range's motion for summary judgment, dismissing plaintiffs' suit with prejudice.[1] A judgment in accordance with the court's findings was signed on January 24, 2003. It is from this judgment that plaintiffs have appealed, assigning error to the trial *618 court's judgment granting summary judgment in favor of Scott Range.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Johnson v. Evan Hall Sugar Coop., Inc., 2001-2956, p. 3 (La.App. 1 Cir. 12/30/02), 836 So.2d 484, 486. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966(B). Summary judgment is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ. P. art. 966(A)(2); Thomas v. Fina Oil and Chemical Co., XXXX-XXXX, pp. 4-5 (La.App. 1 Cir. 2/14/03), 845 So.2d 498, 501-502.
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La.Code Civ. P. art. 966(C)(2); Robles v. Exxonmobile, XXXX-XXXX, p. 4 (La.App. 1 Cir. 3/28/03), 844 So.2d 339, 341.
Summary judgments are reviewed on appeal de novo. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Ernest v. Petroleum Service Corp., 2002-2482, p. 3 (La.App. 1 Cir. 11/19/03), 868 So.2d 96, 97, writ denied, XXXX-XXXX (La.2/20/04), 866 So.2d 830.
In Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, pp. 26-27 (La.7/5/94), 639 So.2d 730, 750-751, the Louisiana Supreme Court set forth the following parameters for determining whether an issue is genuine or a fact is material.
A "genuine issue" is a "triable issue." More precisely, "[a]n issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Summary judgment is the means for disposing of such meretricious disputes." In determining whether an issue is "genuine," courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. "Formal allegations without substance should be closely scrutinized to determine if they truly do reveal genuine issues of fact."
A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." Simply put, a "material" fact is one that would matter on the trial on the merits. Any doubt as *619 to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. [Citations omitted.]
Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Foreman v. Danos and Curole Marine Contractors, Inc., 97-2038, p. 7 (La.App. 1 Cir. 9/25/98), 722 So.2d 1, 4, writ denied, 98-2703 (La.12/18/98), 734 So.2d 637. Thus, we now turn to a discussion of the applicable law.
The owner or person having custody of immovable property has a duty to keep such property in a reasonably safe condition. He must discover any unreasonably dangerous condition on his premises and either correct the condition or warn potential victims of its existence. Vinccinelli v. Musso, XXXX-XXXX, p. 4 (La.App. 1 Cir. 2/27/02), 818 So.2d 163, 165, writ denied, XXXX-XXXX (La.6/7/02), 818 So.2d 767. This duty is the same under the strict liability theory of La. Civ.Code art. 2317 and the negligence liability theory of La. Civ.Code art. 2315. Williams v. Leonard Chabert Medical Center, 98-1029, p. 5 (La.App. 1 Cir. 9/26/99), 744 So.2d 206, 209, writ denied, XXXX-XXXX (La.2/18/00), 754 So.2d 974. Under either theory, the plaintiff has the burden of proving that: (1) the property that caused the damage was in the "custody" of the defendant; (2) the property had a condition that created an unreasonable risk of harm to persons on the premises; (3) the unreasonably dangerous condition was a cause in fact of the resulting injury; and (4) the defendant had actual or constructive knowledge of the risk. Vinccinelli, XXXX-XXXX at 4, 818 So.2d at 165.
In general, defendants may have no duty to protect against an open and obvious hazard. If the facts of a particular case show that the complained of condition should be obvious to all, the condition may not be unreasonably dangerous and the defendant may owe no duty to the plaintiff. Pitre v. Louisiana Tech University, 95-1466, 95-1487, p. 11 (La.5/10/96), 673 So.2d 585, 591, cert. denied, 519 U.S. 1007, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996). The degree to which a potential victim may observe a danger is one factor in the determination of whether the condition is unreasonably dangerous. A landowner is not liable for an injury that results from a condition that should have been observed by the individual in the exercise of reasonable care or was as obvious to a visitor as it was to the landowner. Williams, 98-1029 at 8, 744 So.2d at 211. Whether a condition is unreasonably dangerous requires consideration of: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature. Hutchinson v. Knights of Columbus, Council No. 5747, XXXX-XXXX, pp. 9-10 (La.2/20/04), 866 So.2d 228, 235.
In moving for summary judgment, Scott Range argued that the borrow pit was an open and obvious hazard and, thus, not unreasonably dangerous. Scott Range further asserted there was no duty to warn or protect Ms. Hull against this obvious hazard. Accordingly, Scott Range maintained, it could not be liable for any damages to plaintiffs under either negligence or strict liability. In support of its motion for summary judgment, Scott Range submitted affidavits from various individuals regarding their knowledge of the borrow pit in question.
*620 Dr. Jimmy B. Smith, a partner in Scott Range, indicated in his affidavit that the borrow pit was visible from 560 feet away at all times of the year. He further stated that Scott Range was "never concerned that someone would drive into the [borrow pit] ... because the land was completely flat, and because the land was kept free of underbrush at all times by ... the partnership." Similarly, Coley A. Scott, another partner in Scott Range, indicated that "the property is generally flat with good visibility" and that the borrow pit is clearly visible at all times from a distance of more than 550 feet away. Mr. Scott further noted that the road leading to the borrow pit and about 75 feet on either side of the pit is mowed on a regular basis and "the visibility from the driveway of the [borrow pit] is not obstructed by weeds at any time of the year."
Scott Range also submitted the affidavit of Alvin Fairburn, a licensed surveyor who inspected the property in question on November 6, 1998. According to Mr. Fairburn, "[t]here were no buildings, trees, bushes or other obstructions over the... distance of approximately 568 feet between the turn in the road and the edge of the [borrow pit]." Mr. Fairburn further added that when approaching the borrow pit from a westerly direction, there "was no sharp drop off at the edge of the [borrow pit] which could have concealed it from a motorist approaching from a westerly direction."
The other affidavits submitted by Scott Range were from three Livingston Parish Sheriff's officers who participated in the investigation of Ms. Hull's accident. All three officers indicated that the borrow pit located on South Range Road was an "obvious hazard in plain view" from I-12.[2] Moreover, one of the three officers added that the location of the borrow pit was "well known to residents of Livingston Parish."[3]
The plaintiffs, on the other hand, opposed the motion for summary judgment, arguing that there remained a genuine issue of material fact regarding whether the borrow pit was visible at the time of the accident in question. According to plaintiffs, Scott Range was negligent for failing to 1) warn motorists of the danger the pit posed; 2) maintain barriers and/or barricades in front of the pit; 3) limit access to vehicular traffic traveling near the pit; 4) place warning signs on the property alerting vehicular traffic to the pit's existence; and 5) mark or delineate the gravel roadway's termination into the pit. Plaintiffs further argued that Scott Range was strictly liable because at the time of the accident, the pit presented an unreasonable risk of harm to Ms. Hull and her daughter.
In support of their position, plaintiffs submitted several affidavits concerning the condition of the land surrounding the borrow pit at the time of the accident in question. Donnie Eunelle Bozeman, Ms. Hull's mother, attested to her recollection of the events following her daughter's death. On the day of the accident, she and her husband, Harry Aldrich Bozeman, III, were at Columbia Medical Center at around 3:00 p.m. when Ms. Hull and her young daughter were pronounced dead. They left the hospital at approximately *621 5:30 p.m. and went immediately to the accident site. According to Mrs. Bozeman, "there were gates to each side of the beginning of the gravel roadway from [South] Range Road" that were open and "overgrown with weeds." As they traveled down the gravel roadway to the borrow pit, they noticed "knee-high weeds overgrown in front of the borrow pit immediately adjacent to the gravel road that would have obscured the view of the borrow pit from a motorist." The weeds were such that the borrow pit would not have been visible to a motorist approaching the pit traveling in a westerly direction along the gravel roadway.
Plaintiffs also submitted the affidavit of Mr. Bozeman, in which he corroborated his wife's version of events. Mr. Bozeman stated he remembered there were knee-high weeds obstructing their view of the borrow pit as they traveled down the gravel roadway from South Range Road. In the third and final affidavit submitted by plaintiffs in support of their position, Sandra Smith Welch, a friend of Ms. Hull's, confirmed that she too went to the accident scene on the day of the accident. Ms. Welch indicated that she arrived there at approximately 4:00 p.m. and noted what she described as "weeds and/or grass [that] were knee-high to waist-high tall" in front of the borrow pit. She added further that the weeds and/or grass that she observed that day "would have hidden the borrow pit from a motorist who approached the [borrow pit] traveling on the gravel road."
On appeal, plaintiffs contend it is obvious from a reading of the above affidavits that there remains a genuine issue of material fact regarding whether the borrow pit was visible at the time of the accident in question. Further, plaintiffs maintain, "the clear relevance of the material fact of visibility of the borrow pit bears upon the responsibility of the defendant, Scott Range," thus precluding summary judgment under the facts and circumstances herein. Following a thorough review of the record and the evidence introduced by the parties in support of their respective positions, we agree.
As previously indicated, any doubt as to a dispute regarding a material issue of fact must be resolved against granting a motion for summary judgment and in favor of a trial on the merits. See Smith, 93-2512 at 27, 639 So.2d at 751. In the instant case, the evidence before the trial court sufficiently raised genuine issues of material fact as to whether the borrow pit in question constituted an unreasonable risk of harm and whether the borrow pit was an open and obvious hazard such that Scott Range would have owed no duty to Ms. Hull and her daughter. Resolution of these unresolved issues is essential to plaintiffs' cause of action under either negligence or strict liability. Therefore, we conclude the trial court erred in granting summary judgment in favor of Scott Range and preventing a full evidentiary hearing on all issues.

CONCLUSION
For the above and foregoing reasons, the trial court's judgment granting summary judgment in favor of Scott Range is reversed and the matter is remanded for further proceedings consistent with this opinion. All costs associated with this appeal are assessed against Scott Range.
REVERSED AND REMANDED.
NOTES
[1] Although the court's January 24, 2003 judgment indicates there were "reasons orally assigned on December 9, 2002," the record before us does not contain a transcript of the court's reasons. Moreover, the minute entry from the December 9, 2002 hearing makes no reference to any reasons for judgment given by the trial court.
[2] Although these affidavits support the position that the borrow pit was visible from I-12, there is no evidence in the record to suggest that Ms. Hull traveled on I-12 immediately prior to this tragic incident. Rather, the evidence simply reveals that Ms. Hull was traveling in a westerly direction on the gravel roadway that leads from South Range Road onto Scott Range's property and ends at the pit.
[3] Interestingly, the two other officers crossed through this statement on their affidavits.